1  Jennifer Pafiti (SBN 282790)
   **POMERANTZ LLP**
2  468 North Camden Drive
   Beverly Hills, CA 90210
3  Telephone:  (818) 532-6449
   E-mail:      jpafiti@pomlaw.com
4
   Jeremy A. Lieberman
5  J. Alexander Hood II
   Marc Gorrie
6  **POMERANTZ LLP**
   600 Third Avenue, 20th Floor
7  New York, New York 10016
   Telephone:  (212) 661-1100
8  Facsimile:   (212) 661-8665
   Email:  jalieberman@pomlaw.com
9         ahood@pomlaw.com
          mgorrie@pomlaw.com
10
   Patrick V. Dahlstrom
11 **POMERANTZ LLP**
   10 South La Salle Street, Suite 3505
12 Chicago, Illinois 60603
   Telephone:  (312) 377-1181
13 Facsimile:   (312) 377-1184
   Email:  pdahlstrom@pomlaw.com
14
   *Attorneys for Plaintiff*
15
                  **UNITED STATES DISTRICT COURT**
16               **CENTRAL DISTRICT OF CALIFORNIA**

17 JOHN M. FLYNN, Individually and        **No.**
   on Behalf of All Others Similarly
18 Situated,                              **CLASS ACTION**

19                         Plaintiff,     **COMPLAINT FOR
                                          VIOLATION OF THE
20         v.                             FEDERAL SECURITIES
                                          LAWS**
21 SIENTRA, INC., HANI ZEINI, and
   MATTHEW PIGEON,                        **DEMAND FOR JURY TRIAL**
22                         Defendants.

23

{00178394;1 }      COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff John M. Flynn ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Sientra, Inc. ("Sientra" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than defendants and their affiliates, who purchased the securities of Sientra from March 18, 2015 to September 24, 2015, inclusive (the "Class Period").  Plaintiff seeks to pursue remedies against Sientra and certain of its officers and directors for violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Defendant Sientra, a medical aesthetics company, develops and sells medical aesthetics products to plastic surgeons.  Sientra offers silicone gel breast implants for use in breast augmentation and breast reconstruction procedures, as well as breast tissue expanders.  Sientra also provides body contouring and other

implants, including gluteal, pectoral, calf, facial, and nasal implants.

3.    The exclusive manufacturer of Sientra's products is Silimed. Headquartered in Brazil, Silimed is the largest manufacturer of silicone implants in South America.

4.    The Company was founded in 2003 and was formerly known as Juliet Medical, Inc.  Sientra is headquartered in Santa Monica, California, and its shares trade on the NASDAQ under the ticker symbol "SIEN."

5.    Throughout the Class Period, defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance.  Specifically, during the Class Period, defendants made false and/or misleading statements and/or failed to disclose that: (i) Sientra's exclusive reliance on Silimed's Brazilian manufacturing facilities carried significant quality control risks; (ii) the manufacturing processes at the Silimed Rio de Janeiro manufacturing plant were contaminated; and (iii)  as a result of the above, the Company's statements regarding quality control and other financial statements were materially false and misleading at all relevant times.

6.    On September 24, 2015, it was announced that the United Kingdom's Medicines and Healthcare Products Regulatory Agency ("MHRA") had suspended sales of Silimed products after an audit of Silimed's manufacturing processes revealed contamination in Silimed's Rio de Janeiro manufacturing plant.

7.     On this news, shares of Sientra fell $10.88, or nearly 52.9%, to close at $9.70 on September 24, 2015.

8.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

11.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the securities of Sientra at artificially

1   inflated prices during the Class Period and was damaged upon the revelation of

2   the alleged corrective disclosure.

3          14.    Defendant Sientra is a Delaware company headquartered and

4   operating at 420 South Fairview Avenue, Suite 200, Santa Barbara, CA 93117.

5   Sientra's shares trade on the NASDAQ under the ticker symbol "SIEN."

6          15.    Defendant Hani Zeini ("Zeini") has served at all relevant times as the

7   Company's President, Director, and Chief Executive Officer ("CEO").

8          16.    Defendant Matthew Pigeon ("Pigeon") has served at all relevant

9   times as the Company's Treasurer and Chief Financial Officer ("CFO").

10         17.    The Defendants referenced in ¶¶ 15 - 16 are sometimes referred to

11   herein, collectively, as the "Individual Defendants.

12                          **SUBSTANTIVE ALLEGATIONS**

13                                  **Background**

14         18.    Defendant Sientra, a medical aesthetics company, develops and sells

15   medical aesthetics products to plastic surgeons.  Sientra offers silicone gel breast

16   implants for use in breast augmentation and breast reconstruction procedures, as

17   well as breast tissue expanders.  Sientra also provides body contouring and other

18   implants, including gluteal, pectoral, calf, facial, and nasal implants.

19         19.    The exclusive manufacturer of Sientra's products is Silimed.

20   Headquartered in Brazil, Silimed is the largest manufacturer of silicone implants

21   in South America.

22         20.    The Company was founded in 2003 and was formerly known as

23   Juliet Medical, Inc.  Sientra is headquartered in Santa Monica, California, and its

1    shares trade on the NASDAQ under the ticker symbol "SIEN."

2

3

4    **Materially False and Misleading**
     **Statements Issued During the Period**

5        21.    The Class Period begins on March 18, 2015, when Sientra filed an

6    annual report on Form 10-K with the SEC announcing the Company's financial

7    and operating results for the quarter and year ending December 31, 2014 (the

8    "2014 10-K"). For the quarter, the Company reported a net loss of $3.20 million,

9    or $0.34 per diluted share, on revenue of $12.12 million. For 2014, the Company

10   reported a net loss of $5.81 million, or $2.28 per diluted share, on revenue of

11   $44.73 million, compared to a net loss of $19.13 million, or $82.25 per diluted

12   share, on revenue of $35.17 million for 2013.

13       22.    The 2014 10-K stated, in part:

14   All of our products are listed under our FDA Medical Device
     Establishment Registration where it indicates we are the specification
15   developer of our products and we are the owner of our products' FDA
     approvals and clearances. ***This means that we are primarily***
16   ***responsible for the manufacturing and quality assurance of our***
     ***products.*** However, we do not manufacture our products ourselves.
17   Instead, we rely on Silimed, as our contract manufacturer, to
     manufacture and package our silicone gel breast implants, tissue
18   expanders and other products to our specifications. Silimed has over
     34 years of experience manufacturing silicone-based implants and
19   distributes its products to over 60 countries worldwide. ***When we***
     ***receive products from Silimed, we inspect the products prior to***
20   ***shipping them to our customers.*** We maintain strategic levels of
     inventory at our storage facilities located in Santa Barbara, California.
21

22   We and Silimed are subject to the FDA's Quality System Regulation,
23   or QSR, reporting requirements and cGMP audits by the FDA. Under

the QSR and cGMP requirements, manufacturers, including third party manufacturers, must follow stringent design, testing, production, control, supplier and contractor selection, complaint handling, documentation and other quality assurance procedures during all aspects of the manufacturing process. Both we and Silimed have been inspected by the FDA regularly, and no FDA Form 483 observations, which are issued when an FDA inspector believes that observed conditions or practices indicate the possibility that an FDA-regulated product may be in violation of FDA's requirements, have been made in connection with these inspections. Silimed has had three FDA inspections in seven years and is also audited periodically by our quality department to ensure conformity with the specifications, policies and procedures for our products.

***At present, all of our products, including our silicone gel breast implants and breast tissue expanders, are manufactured by Silimed*** pursuant to an amended and restated exclusivity agreement with Silimed which we refer to as the Silimed Agreement.
. . .

**There are inherent risks in contracting with manufacturers located outside of the United States such as in Brazil.**

Silimed is our sole source, third-party manufacturer and its manufacturing plant is located in Brazil. There are inherent risks in contracting with manufacturers located outside of the United States such as in Brazil, including the risks of economic change, recession, labor strikes or disruptions, political turmoil, new or changing tariffs or trade barriers, new or different restrictions on importing or exporting, civil unrest, infrastructure failure, cultural differences in doing business, lack of contract enforceability, lack of protection for intellectual property, war and terrorism. If any of these risks were to materialize, we and Silimed would both be materially adversely affected and our business, financial condition and results of operations would suffer.

(Emphases added.)

23.     The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On May 13, 2015, Sientra issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the quarter ending March 31, 2015 (the "Q1 2015 8-K").   For the quarter, the Company reported a net loss of $3.38 million, or $0.23 per diluted share, on revenue of $12.43 million.

25.     On May 14, 2015, Sientra filed a quarterly report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q1 2015 8-K (the "Q1 2015 10-Q").

26.     The Q1 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On August 12, 2015, Sientra issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the quarter ending June 30, 2015 (the "Q2 2015 8-K").   For the quarter, the Company reported a net loss of $2.99 million, or $0.20 per diluted share, on revenue of $14.21 million.

28.   On August 13, 2015, Sientra filed a quarterly report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q2 2015 8-K (the "Q2 2015 10-Q").

29.   The Q2 2015 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.   The statements referenced in ¶¶ 21 - 29 above were materially false and misleading because Defendants made false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations, prospects, and performance.   Specifically, during the Class Period, defendants made false and/or misleading statements and/or failed to disclose that: (i) Sientra's exclusive reliance on Silimed's Brazilian manufacturing facilities carried quality control risks; (ii) the manufacturing processes at the Silimed Rio de Janeiro manufacturing plant were contaminated; and (iii) as a result of the above, the Company's statements regarding quality control and other financial statements were materially false and misleading at all relevant times.

### The Truth Emerges

31.   On September 24, 2015, it was announced that the United Kingdom's MHRA had suspended sales of Silimed products after an audit of Silimed's manufacturing processes revealed contamination in Silimed's Rio de Jeaneiro manufacturing plant.

32.     On this news, shares of Sientra fell $10.88, or nearly 52.9%, to close at $9.70 on September 24, 2015.

33.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Sientra securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Sientra Class Period, securities of Sientra were actively traded on the NASDAQ Global Select Market. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Sientra or their transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law complained of herein.

37.    Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action and securities litigation.

38.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Sientra;

- whether the Individual Defendants caused Sientra to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Sientra securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.    Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation

make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

40.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Sientra securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Sientra securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.   Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972),

as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Against All Defendants For Violations of**
**Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

43.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.    This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.    During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Sientra securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Sientra securities and options at artificially inflated prices. In furtherance of this

1    unlawful scheme, plan and course of conduct, defendants, and each of them, took

2    the actions set forth herein.

3        46.    Pursuant to the above plan, scheme, conspiracy and course of

4    conduct, each of the defendants participated directly or indirectly in the

5    preparation and/or issuance of the quarterly and annual reports, SEC filings, press

6    releases and other statements and documents described above, including

7    statements made to securities analysts and the media that were designed to

8    influence the market for Sientra securities.  Such reports, filings, releases and

9    statements were materially false and misleading in that they failed to disclose

10   material adverse information and misrepresented the truth about Sientra's quality

11   control processes and business prospects.

12       47.    By virtue of their positions at Sientra, defendants had actual

13   knowledge of the materially false and misleading statements and material

14   omissions alleged herein and intended thereby to deceive Plaintiff and the other

15   members of the Class, or, in the alternative, defendants acted with reckless

16   disregard for the truth in that they failed or refused to ascertain and disclose such

17   facts as would reveal the materially false and misleading nature of the statements

18   made, although such facts were readily available to defendants.  Said acts and

19   omissions of defendants were committed willfully or with reckless disregard for

20   the truth.  In addition, each defendant knew or recklessly disregarded that material

21   facts were being misrepresented or omitted as described above.

22       48.    Defendants were personally motivated to make false statements and

23   omit material information necessary to make the statements not misleading in

1    order to personally benefit from the sale of Sientra securities from their personal

2    portfolios.

3        49.    Information showing that defendants acted knowingly or with

4    reckless disregard for the truth is peculiarly within defendants' knowledge and

5    control.   As the senior managers and/or directors of Sientra, the Individual

6    Defendants had knowledge of the details of Sientra's internal affairs.

7        50.    The Individual Defendants are liable both directly and indirectly for

8    the wrongs complained of herein.   Because of their positions of control and

9    authority, the Individual Defendants were able to and did, directly or indirectly,

10   control the content of the statements of Sientra.  As officers and/or directors of a

11   publicly-held company, the Individual Defendants had a duty to disseminate

12   timely, accurate, and truthful information with respect to Sientra's business,

13   operations, future financial condition and future prospects.   As a result of the

14   dissemination of the aforementioned false and misleading reports, releases and

15   public statements, the market price of Sientra securities was artificially inflated

16   throughout the Class Period.   In ignorance of the adverse facts concerning

17   Sientra's operations and quality control processes which were concealed by

18   defendants, Plaintiff and the other members of the Class purchased or otherwise

19   acquired Sientra securities at artificially inflated prices and relied upon the price

20   of the securities, the integrity of the market for the securities and/or upon

21   statements disseminated by defendants, and were damaged thereby.

22       51.    During the Class Period, Sientra securities were traded on an active

23   and efficient market.  Plaintiff and the other members of the Class, relying on the

materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Sientra securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Sientra securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Sientra securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

52.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

54.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     During the Class Period, the Individual Defendants participated in the operation and management of Sientra, and conducted and participated, directly and indirectly, in the conduct of Sientra's business affairs.  Because of their senior positions, they knew the adverse non-public information about Sientra's business and quality control.

56.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Sientra's quality control processes and to correct promptly any public statements issued by Sientra which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Sientra disseminated in the marketplace during the Class Period concerning Sientra's results of operations and quality control processes.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Sientra to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Sientra within the meaning of Section 20(a) of the Exchange Act.  In

1  this capacity, they participated in the unlawful conduct alleged which artificially

2  inflated the market price of Sientra securities.

3     58.    Each of the Individual Defendants, therefore, acted as a controlling

4  person of Sientra.  By reason of their senior management positions and/or being

5  directors of Sientra, each of the Individual Defendants had the power to direct the

6  actions of, and exercised the same to cause, Sientra to engage in the unlawful acts

7  and conduct complained of herein.  Each of the Individual Defendants exercised

8  control over the general operations of Sientra and possessed the power to control

9  the specific activities which comprise the primary violations about which Plaintiff

10  and the other members of the Class complain.

11     59.    By reason of the above conduct, the Individual Defendants are liable

12  pursuant to Section 20(a) of the Exchange Act for the violations committed by

13  Sientra.

14                        **<u>PRAYER FOR RELIEF</u>**

15     **WHEREFORE**, Plaintiff demands judgment against Defendants as

16  follows:

17     A.    Determining that the instant action may be maintained as a class

18  action under Rule 23 of the Federal Rules of Civil Procedure, and certifying

19  Plaintiff as the Class representative;

20     B.    Requiring Defendants to pay damages sustained by Plaintiff and the

21  Class by reason of the acts and transactions alleged herein;

22

23

1    C.     Awarding Plaintiff and the other members of the Class prejudgment

2  and post-judgment interest, as well as their reasonable attorneys' fees, expert fees

3  and other costs; and

4    D.     Awarding such other and further relief as this Court may deem just

5  and proper.

6                        **DEMAND FOR TRIAL BY JURY**

7    Plaintiff hereby demands a trial by jury.

8  Dated: September 25, 2015

9                                              Respectfully submitted,

10                                             **POMERANTZ LLP**

11                                             By: *s/ Jennifer Pafiti*
                                               Jennifer Pafiti (SBN 282790)
12                                             468 North Camden Drive
                                               Beverly Hills, CA 90210
13                                             Telephone:  (818) 532-6449
                                               E-mail: jpafiti@pomlaw.com
14
                                               **POMERANTZ, LLP**
15                                             Jeremy A. Lieberman
                                               J. Alexander Hood II
16                                             Marc Gorrie
                                               600 Third Avenue, 20th Floor
17                                             New York, New York 10016
                                               Telephone:  (212) 661-1100
18                                             Facsimile: (212) 661-8665
                                               Email:  jalieberman@pomlaw.com
19                                                     ahood@pomlaw.com
                                                       mgorrie@pomlaw.com
20
                                               **POMERANTZ LLP**
21                                             Patrick V. Dahlstrom
                                               Ten South La Salle Street, Suite 3505
22                                             Chicago, Illinois 60603
                                               Telephone:  (312) 377-1181
23                                             Facsimile:  (312) 377-1184

E-mail: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***