Lionel Z. Glancy (SBN 134180)
Robert V. Prongay (SBN 270796)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

[Additional Counsel on Signature Page]

*Liaison Counsel for Lead Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN M. FLYNN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SIENTRA, INC., HANI ZEINI, MATTHEW PIGEON, NICHOLAS SIMON, TIMOTHY HAINES, R. SCOTT GREER, KEVIN O'BOYLE, JEFFREY NUGENT, PIPER JAFFRAY & CO., STIFEL, NICOLAUS & CO., INC., LEERINK PARTNERS LLC., and WILLIAM BLAIR & CO., L.L.C.,<br><br>Defendants. | No. 2:15-cv-07548-SJO-RAO<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS' MOTION**<br><br>Date: January 17, 2017<br>Time: 10:00 a.m.<br>Judge: Hon. S. James Otero<br>Dept.: 1 |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION.................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................1

I. INTRODUCTION ........................................................................................ 1

II. SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS... 3

   A. Lead Plaintiffs' Claims and Allegations .........................................3

   B. Procedural History........................................................................... 5

   C. Settlement Negotiations ..................................................................7

   D. The Proposed Terms of the Settlement ................................................ 8

      1. Class Definition................................................................... 8

      2. Monetary Consideration and Plan of Allocation........................... 8

      3. Release Provisions ....................................................................9

      4. Attorneys' Fees and Reimbursement of Expenses........................ 10

      5. The Court's Continuing Jurisdiction ................................................11

III. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE ........................................................................................11

   A. The Settlement Approval Process ........................................................11

   B. The Proposed Settlement Meets the Requirements for Preliminary Approval................................................................................ 13

      1. The Settlement Provides a Favorable Recovery for the Class ....... 13

      2. The Risks of Further Litigation Weigh Heavily in Favor of Preliminary Approval ...........................................................15

         (a) Factual and Legal Risks.......................................... 15

         (b) Obstacles to Obtaining Discovery..................................... 16

         (c) Issues of Collectability ...................................................... 17

      3. The Support of the Settlement by Experienced Counsel Weighs in Favor or Preliminary Approval ..................................................17

i

IV. THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT

    PURPOSES ...................................................................19

      A. Numerosity ............................................................19

      B. Commonality ..........................................................20

      C. Typicality.............................................................. 21

      D. Adequacy .............................................................21

      E. Common Questions of Law Predominate and a Class Action is the

        Superior Method of Adjudication ........................................22

V. THE PROPOSED NATURE AND METHOD OF CLASS NOTICE

    SHOULD BE APPROVED ...................................................23

VI. PROPOSED SCHEDULE OF EVENTS ................................... 26

VII. CONCLUSION ........................................................27

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:15-cv-07548-SJO-RAO

## **TABLE OF AUTHORITIES**

*Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598 (N.D. Cal. 1991) .................... 21

*Angelo Albano et al. v. Sientra, Inc. et al.*, Case No. Civ-536138
(Cal. Sup. Ct.) ...................................................................................................... 6

*Armstrong v. Board of School Directors*, 616 F.2d. 305 (7th Cir. 1980) .......... 18

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ...................................... 19, 20

*Browning v. Yahoo! Inc.*, No. C04-01463, 2007 U.S. Dist. LEXIS 86266
(N.D. Cal. Nov. 16, 2007) ...................................................................................12

*Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391 (N.D. Ill. 1999) ..................... 21

*Dubin v. Miller*, 132 F.R.D. 269 (D. Colo. 1990) .............................................21

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) ...........................................23

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482
(E.D. Pa. 1985) ....................................................................................................18

*Flynn v. Sientra, Inc.*, CV 15-07548 SJO (RAO), 2016 U.S. Dist. LEXIS
83409 (C.D. Cal. June 9, 2016) ........................................................................... 6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................... 19, 21, 22

*Howard Kleiman v. Sientra, Inc. et al.*, Case No. Civ-536313
(Cal. Sup. Ct.) ......................................................................................................6

*In re Cirrus Logic Sec.*, 155 F.R.D. 654 (N.D. Cal. 1994) ......................... 19, 20

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337
(C.D. Cal. June 10, 1992) ................................................................................... 17

*In re Heritage Bond Litig.*, MDL Case No.: 02-ML-1475, 2005 U.S.
Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ........................................... 11, 14

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .... 24

*In re Intelcom Grp., Inc., Sec. Litig.*, 169 F.R.D. 142 (D. Colo. 1996)....... 21, 23

*In re Inter-Op Hip Prosthesis, Liab. Litig.*, 204 F.R.D. 359
(N.D. Ohio 2001) ................................................................................. 22

*In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............14

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ........ 13

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607
(S.D. Cal. 2008) .......................................................................... 12, 20

*Khanna v. Intercon Sec. Sys. Inc.*, 2014 WL 1379861
(E.D. Cal. Apr. 8, 2014).................................................................. 18

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) .................................. 18

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 661, 2010 U.S. Dist. LEXIS
35183 (N.D. Tex. 2010)................................................................... 18

*Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367
(N.D. Cal. Feb. 2, 2009) ................................................................. 14

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ...........22

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) ................. 12

*Nat'l Rural Telecommc'ns. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
(C.D. Cal. 2004) .............................................................................12

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ............................................... 14

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615
(9th Cir. 1982)......................................................................... 11, 14

*Oklahoma Police Pension & Retirement System v. Sientra, Inc. et al.*,
Lead Case No. Civ-536013 (Cal. Sup. Ct.) ...................................... 6

*Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*,
611 F. Supp. 990 (C.D. Cal. 1984) ...................................................19

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ................................18

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .......................23

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, Case No.
EDCV 08-482-VAP (OPx), 2010 U.S. Dist. LEXIS 69799
(C.D. Cal. June 15, 2010) ................................................................23

*Schwartz v. Harp*, 108 F.R.D. 279 (C.D. Cal. 1985) .........................................20

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976).......................11

*Wehner v. Syntex Corp.*, 117 F.R.D. 641 (N.D. Cal. 1987) ..............................20

*Villegas v. J.P. Morgan Chase & Co.*, No. CV-09-00261 SBA (EMC),
2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ..................................................18

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982)........................................18

*Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 U.S. Dist.
LEXIS 19674 (S.D. Cal. Mar. 4, 2010) .....................................................12, 13

*Young v. Polo Retail, LLC*, No C-02-4546 VRW, 2006 U.S. Dist. LEXIS
81077 (N.D. Cal. Oct. 25, 2006) ........................................................13

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that Quad Development LLC and John M. Flynn (collectively, "Co-Lead Plaintiffs" or "Lead Plaintiffs") hereby move for an order (i) granting preliminary approval of the proposed Settlement set forth in the Stipulation of Settlement;[1] (ii) approving the form and manner of giving notice of the proposed Settlement to the Class; and (iii) setting a hearing date to consider final approval of the proposed Settlement and Co-Lead Counsel's request for an award of attorneys' fees and costs.  The Motion is scheduled to be heard at 10:00 a.m. on January 17, 2017, in the courtroom of the Honorable S. James Otero, in the United States District Court for the Central District of California, 350 W. 1st Street, Los Angeles, California.

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>
### <u>(motion for page extension pending)</u>

## I.   INTRODUCTION

Lead Plaintiffs respectfully submit this memorandum in support of their unopposed motion for an order preliminarily approving the proposed settlement ("Settlement") of this action embodied in the Stipulation of Settlement ("Stipulation") filed herewith.   The proposed Settlement was reached after the resolution of Defendants' motions to dismiss, which were granted in part and denied in part by this Court, and after the Parties engaged in lengthy, arm's length settlement negotiations facilitated through an experienced and respected mediator, Robert Meyer.  Based on a thorough understanding of the facts and the law, the Parties agreed to the proposed Settlement which consists of $10,900,000 in cash.  If approved, the Settlement will fully resolve this action which was filed in September 2015 on behalf of a class of all

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation.

Persons who purchased or otherwise acquired Sientra Common Stock (as defined in ¶ 1.7 of the Stipulation) pursuant or traceable to Sientra's secondary offering in September 2015, and all Persons who purchased or acquired Sientra Common Stock during the period May 14, 2015 through and including October 28, 2015. Excluded from the Class are Defendants, members of the immediate families of Defendants, any firm, trust, partnership, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded person. Also excluded from the Class is any Person who validly requests exclusion pursuant to the requirements set forth in the Notice. *See* Stipulation, ¶ 1.5.

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed Settlement is within the range of what might be found to be fair, reasonable and adequate so that notice of the proposed Settlement can be provided to Class Members and a hearing scheduled to consider final settlement approval.  The Settlement clearly meets these criteria.  As discussed below, while Lead Plaintiffs believe their claims are meritorious, significant issues exist with respect to liability and damages; therefore, the $10,900,000 cash fund that will be created under the Parties' agreement represents a beneficial resolution of this litigation.  Consequently, Lead Plaintiffs and Co-Lead Counsel believe the Settlement is in the best interests of the Class.

Because all the requirements for settlement approval, and certification of a class, are met, the Court should certify the Class for settlement purposes. Additionally, because the Plan of Allocation is fair, reasonable and adequate, it should be preliminarily approved.  Finally, the Court should schedule a final approval hearing to determine whether the proposed Settlement, the Plan of Allocation, and Co-Lead Counsel's request for attorneys' fees and reimbursement of expenses ("Fee Request") should be finally approved as fair, reasonable and adequate.

If preliminary approval is granted, Lead Plaintiffs will notify class members of

the proposed Settlement by mailing to them the Notice of Proposed Settlement of Class Actions ("Notice") and Proof of Claim and Release.  The Notice will also be posted on the website created for the Settlement, www.sientrashareholderlitigation.com.

The Notice advises Class Members of the essential terms of the proposed Settlement, of information regarding Co-Lead Counsel's application for attorneys' fees and reimbursement of expenses, and of the proposed plan for allocating the Settlement proceeds among Class Members.  The Notice also sets forth the procedure for objecting to the proposed Settlement or Fee Request or opting out of the Class, and notifies Class Members of the date, time, and place of the Final Approval Hearing. The Stipulation also provides for publication of a Summary Notice, which will be widely disseminated by the Claims Administrator.

## II. SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A. Lead Plaintiffs' Claims and Allegations

During the relevant time period, Defendant Sientra, Inc. ("Sientra" or the "Company") sold breast implants made by a single manufacturer, Silimed Indústria de Implantes Ltda. ("Silimed"), in a single facility, in Rio de Janeiro, Brazil.  Sientra was founded as Silimed's sole distributor in the U.S., acquired Silimed's U.S. subsidiary in 2007, and certain of its executives came from Silimed.

Plaintiffs allege that in the spring and summer 2015, European health regulators discovered that the breast implants manufactured in that facility, where all of Sientra's products were made, were contaminated with foreign particulates.  Silimed performed its own inspection and reached the same conclusion.  Plaintiffs further allege that shortly thereafter, Sientra—which was in need of a cash infusion—announced that it was seeking to raise over $60 million through a secondary public stock offering ("SPO").  At the time of the SPO, the contamination had not been revealed to the investing public.

In connection with the SPO, Sientra filed a Registration Statement and

Prospectus ("Offering Documents") with the U.S. Securities and Exchange Commission ("SEC").  The Offering Documents indicated to investors that *Sientra*, not Silimed, was "primarily responsible for the manufacturing and quality assurance of [Sientra's] products," including performing inspections of all product shipments from Silimed.  Plaintiffs allege that the Offering Documents also addressed various aspects of the manufacturing of Sientra's products at the Rio de Janeiro facility, including compliance with regulatory requirements, and current good manufacturing practices ("cGMP"), without disclosing that widespread contamination at the Rio de Janeiro facility had been found by regulators, and confirmed by Silimed, well before the SPO.

Plaintiffs allege that, notwithstanding Defendants' awareness of the aforementioned regulatory and internal findings, they recklessly continued with the SPO, and with the help of the Underwriter Defendants, undertook the SPO between September 14, 2015 and September 23, 2015, which raised more than $65 million, before underwriter expenses, to aid the Company against the coming turmoil and allow it to stay afloat. Sientra's Registration Statement became effective at 4 p.m. on September 17, 2015, pursuant to Defendants' request to accelerate the effective date. On September 18, 2015, Sientra's Registration Statement was filed with the SEC, with the SPO priced at $22 per share, well above Sientra's $15 per share IPO price offered less than a year earlier.

Minutes after the SPO closed, news about the contamination was revealed by the European regulators, immediately causing the price of Sientra's common stock (including existing stock not issued in the SPO) to plummet by more than 50%.  More bad news followed—including Sientra's suspension of all product sales and the resignation of its top executives—which caused Sientra's stock price to decline further.  Plaintiffs allege that, as a result of Defendants' misrepresentations and omissions about the contamination and related issues, investors suffered damages upwards of $55 million during the Class Period.

### B. Procedural History

On September 25, 2015, John M. Flynn filed this Federal Action in the United States District Court for the Central District of California. *See* Dkt. No 1. On December 10, 2015, the Court appointed Flynn and Quad Development LLC as Co-Lead Plaintiffs and approved their selection of counsel. Dkt. No. 44.[2]

On February 19, 2016, Co-Lead Plaintiffs filed the Consolidated Amended Complaint ("CAC") on behalf of themselves and all other persons or entities who purchased or otherwise acquired Sientra Common Stock: (1) pursuant and/or traceable to the Offering Documents issued in connection with the SPO on or about September 18, 2015; and/or (2) between May 14, 2015 and October 28, 2015, inclusive. Dkt. No. 56. The CAC alleges that Sientra and certain of its officers and directors (collectively, the "Sientra Defendants")[3] knowingly and/or negligently issued Offering Documents containing materially misleading statements and/or omissions, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"). The CAC also alleges that the underwriters of the SPO (the "Underwriter Defendants")[4] negligently failed to ensure the accuracy of the Offering Documents, in violation of Sections 11 and 12(a)(2) of the Securities Act. *Id.*

In addition to this Federal Action, between October 28, 2015 and November 19, 2015, three class actions alleging virtually identical Securities Act claims against

[2]  Specifically, the Court appointed Wolf Popper LLP ("Wolf Popper") and Pomerantz LLP ("Pomerantz") as Co-Lead Counsel, and Glancy Prongay & Murray LLP as Liaison Counsel. Dkt. No. 44.

[3] The Sientra Defendants include Sientra; Hani Zeini, Sientra's founder and former President and CEO; Matthew Pigeon, Sientra's former Treasurer and CFO; and non-executive directors Nicholas Simon, Timothy Haines, R. Scott Greer, Kevin O'Boyle, and Jeffrey Nugent.

[4] The Underwriter Defendants are Piper Jaffray & Co., Stifel Nicolaus & Company, Incorporated, Leerink Partners LLC and William Blair & Company, L.L.C.

Defendants stemming from the SPO were filed in the Superior Court of the State of California, County of San Mateo.  These actions were ultimately consolidated (the "State Action").[5]  On December 4, 2015, Defendants removed the State Action to the United States District Court for the Northern District of California, but they were remanded to the San Mateo Superior Court on May 20, 2016.  The State Action asserts nearly identical Securities Act claims against the Defendants to those here, but does not assert Exchange Act claims.

In the Federal Action, the Sientra Defendants and the Underwriter Defendants moved separately to dismiss the CAC on March 21, 2016, which motions were fully briefed as of May 5, 2016.  On June 9, 2016, the Court issued an Order (the "MTD Order") granting in part and denying in part the motions to dismiss.  Dkt. No. 90; *Flynn v. Sientra, Inc.*, CV 15-07548 SJO (RAO), 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016).

Specifically, the Court sustained the Section 10(b) and 20(a) claims against Defendants Sientra, Zeini, and Pigeon (the "Sientra Insider Defendants"), finding that the CAC's factual allegations were sufficient to "create a strong inference" that the Sientra Insider Defendants "made misleading statements in the [Offering Documents] regarding the regulatory issues present at Silimed's Rio de Janiero facility either intentionally or with deliberate recklessness," and "knew or should have known about significant quality control problems that threatened, and ultimately halted, Silimed's manufacturing operations."  *Id.*, 2016 U.S. Dist. LEXIS 83409, at **40, 42.

The Court also sustained the Section 11 and 12(a)(2) claims against the Underwriter Defendants, finding the CAC's allegations—that the "Underwriter

---

[5] *Oklahoma Police Pension & Retirement System v. Sientra, Inc. et al.*, Lead Case No. Civ-536013 (Cal. Sup. Ct.), consolidated with *Angelo Albano et al. v. Sientra, Inc. et al.*, Case No. Civ-536138 (Cal. Sup. Ct.) and *Howard Kleiman v. Sientra, Inc. et al.*, Case No. Civ-536313 (Cal. Sup. Ct.).

Defendants failed to conduct a reasonable investigation or did not possess a reasonable basis for the belief that the statements contained in the [Offering Documents] were true, were without omission of material fact, and were not misleading"—were sufficient to satisfy the relevant pleading standards. *Id*. at *55.

In addition to the above, the Court shortened the Class Period alleged in the CAC, from May 14, 2015 through October 28, 2015 to September 18, 2015 through October 28, 2015. *Id*. at *36. Thus, Plaintiffs' claims relating to approximately four months of the original Class Period were dismissed.

On July 14, 2016, Defendants moved for reconsideration of the MTD Order. 94. The motion for reconsideration was fully briefed as of August 4, 2016. On August 12, 2016, the Court denied Defendants' motion for reconsideration in full. Dkt. No. 97.

## C.    Settlement Negotiations

Following the Court's denial of Defendants' motions to dismiss – but prior to the filing of the motion for reconsideration – the Parties agreed to attempt to resolve this Federal Action by means of private mediation. On July 5, 2016, the Parties participated in a full-day formal mediation session conducted by a skilled and experienced mediator, Robert Meyer, which, weeks later, resulted in a settlement in principle of both this Federal Action and the State Action. The initial mediation session did not result in a settlement, but negotiations continued thereafter, with regard to the settlement of both this Federal Action and the State Action. Before Plaintiffs would agree to the Settlement in principle, they insisted upon, and reviewed, limited discovery produced by Defendants bearing on the key issues in the case.

On September 9, 2016, the Parties to the Actions executed a Memorandum of Understanding ("MOU") memorializing the principal terms of the Settlement. After reaching an agreement in principle regarding relief to the Class, the Parties began preparing the settlement documents, including the Stipulation, the class notice, the summary notice, the proof of claim form, and the proposed orders granting final

approval and entering final judgment.  The Parties then spent more than two months negotiating the details of a formal, global settlement agreement in the Federal Action and the State Action and drafted the relevant settlement papers, executing the Stipulation on December 16, 2016.

### D.    The Proposed Terms of the Settlement

#### 1.    Class Definition

The Class includes all Persons who purchased or otherwise acquired Sientra Common Stock (as defined in ¶ 1.7 of the Stipulation) pursuant or traceable to Sientra's secondary offering in September 2015, and all Persons who purchased or acquired Sientra Common Stock during the period May 14, 2015 through and including October 28, 2015. Excluded from the Class are Defendants, members of the immediate families of Defendants, any firm, trust, partnership, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded person. Also excluded from the Class is any Person who validly requests exclusion pursuant to the requirements set forth in the Notice.  *See* Stipulation, ¶ 1.5.

#### 2.    Monetary Consideration and Plan of Allocation

Under the terms of the proposed Settlement, the Parties have agreed that Defendants and/or their insurers will make a cash payment of ten million nine-hundred thousand dollars ($10,900,000), as set forth in greater detail in ¶2.1 of the Stipulation.  The $10.9 million in cash will be deposited into the Settlement Fund (as defined in ¶ 1.27 of the Stipulation) within ten (10) business days after the Court executes an order granting preliminary approval of the Settlement.  *See* Stipulation at ¶2.1.  Any interest earned will be for the benefit of the Class.  *See id.*

Lead Plaintiffs have proposed a Plan of Allocation to distribute the Settlement Fund among the Class Members.  A copy of the Plan of Allocation is set forth at pages 6-10 of the Notice, which is attached as Exhibit A-1 to the Stipulation.

Pursuant to the Plan of Allocation, if all affected Sientra damaged shares for

the claims sustained by the Court elect to participate in the Settlement, the average recovery per share could be $2.32, before deduction of any fees, expenses, costs, and awards described herein. Shares in the original class period for which the Court did not sustain the allegations in the CAC (*i.e.*, purchasers of Sientra shares between May 14 - September 17, 2015) could recover up to $ 0.05 per share before the deduction of any fees, expenses, costs, and awards described herein.

Co-Lead Counsel have considered the issues of liability and damages in determining an appropriate proposed Plan of Allocation. Co-Lead Counsel did not favor or consider the particular trading history of the Lead Plaintiffs or of any other individual Class Member in crafting this plan. The Plan of Allocation is fair given the Court's dismissal of the claims for purchasers between May 14, 2015 and September 17, 2015.

### 3. <u>Release Provisions</u>

Upon the Effective Date, as defined in ¶ 8.1 of the Stipulation, Plaintiffs, and each and every Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged any and all Released Claims against Defendants, Defendants' Counsel and any and all of the Released Persons, whether or not any such individual Class Member executes and delivers a Proof of Claim. Released Claims shall collectively mean any and all claims, debts, demands, disputes, rights, causes of action, suits, damages, or liabilities of any kind, nature, and character whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any and all other costs, expert or consulting fees, and any and all other costs, expenses or liabilities whatsoever), whether under federal, state, local, statutory, common law, foreign law, or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, including Unknown Claims (as defined in the Stipulation at ¶ 1.30), whether or not concealed or hidden, that have been or could have been or in the future could be

asserted in any forum by Plaintiffs or any Class Member, or any Person claiming through or on behalf of them, against any of the Released Persons that arise out of the purchase or sale of Sientra Common Stock during the Class Period and are based on or relate in any way, directly or indirectly, to the allegations, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations, or omissions which were or could have been alleged in the Actions, including, but not limited to, allegations relating to the Prospectus or Registration Statement dated September 18, 2015.  "Released Claims" further includes any and all claims arising out of, based upon or related to the Settlement or resolution of the Actions, except for any alleged breaches of this Stipulation. *See* Stipulation, ¶1.22.

Furthermore, all Class Members that have not submitted valid and timely Requests for Exclusion, on behalf of themselves, their current and future heirs, executors, trustees, personal or legal representatives, estates, administrators, attorneys, insurers, agents, predecessors, successors and assigns, and any person they represent, expressly covenant not to assert, or suggest or assist in the assertion of any and all Released Claims against Defendants, Defendants' Counsel and any and all of the Released Persons and shall be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal or administrative forum  asserting any Released Claims against Defendants, Defendants' Counsel and any and all of the Released Persons, whether or not any such individual Class Member executes the Proof of Claim.

While the claims asserted in the CAC were specific securities claims arising under the Securities Exchange Act of 1934 and the Securities Act of 1933, they stem from the purchase of Sientra Common Stock during the Class Period.  The claims released as a condition of the Settlement are all claims arising out of the purchase of Sientra Common Stock during the Class Period.

### 4.   Attorneys' Fees and Reimbursement of Expenses

Co-Lead Counsel will apply to the Court for an award of attorneys' fees in an amount which, collectively together with any award to plaintiffs' counsel in the State Action, will not exceed twenty percent 25% of the Settlement Amount (or approximately $2,725,000).  The specific amount of the attorneys' fee request in this Federal Action will be reflected in the motion for final approval of the Settlement and Fee Request.  Co-Lead Counsel will also apply to the Court for a reimbursement of its reasonable expenses incurred through the litigation, in an amount not to exceed $75,000.  Additionally, a Compensatory Award for the time and expenses incurred by each Lead Plaintiff will be sought, not to exceed $5,000 per Lead Plaintiff.

### 5.    The Court's Continuing Jurisdiction

If the Court grants final approval of the proposed Settlement, the Parties will request that the Court enter a final judgment of dismissal.  The Court will retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement, and all Parties agree to submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.  *See* Stipulation at ¶ 9.12.

## III.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A. The Settlement Approval Process

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise of claims brought on a class-wide basis.  Fed. R. Civ. P. 23(e) ("The Claims . . . of a certified class may be settled . . . only with the court's approval."). "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  *In re Heritage Bond Litig.*, MDL Case No.: 02-ML-1475, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10, 2005); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

Cir. 1976); *see also Browning v. Yahoo! Inc.*, No. C04-01463, 2007 U.S. Dist. LEXIS 86266, at *39 (N.D. Cal. Nov. 16, 2007) ("public and judicial policies strongly favor settlement of class action suits").

Approval of a class action settlement requires two stages of judicial approval: (i) preliminary approval, followed by the distribution of notice to the class, and (ii) final approval.   *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010) ("Procedurally, the approval of a class action settlement takes place in two stages."); *see also Nat'l Rural Telecommc'ns. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).   "In the first stage of the approval process, the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . ., and authorize[s] notice to be given to the Class." *Murillo*, 266 F.R.D. at 473 (alterations in original).

At this initial preliminary approval stage, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible approval."   *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 U.S. Dist. LEXIS 19674, at *15-16 (S.D. Cal. Mar. 4, 2010); *see also In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008).   In considering whether to grant preliminary approval of a proposed class action settlement, courts make a preliminary evaluation of the fairness of the settlement.   At this stage, however, the court is not required to make a final determination as to whether the proposed settlement will ultimately be found to be fair, reasonable, and adequate.   Rather, that evaluation is made only at the final approval stage, after notice of the proposed settlement has been given to the members of the class and class members have had an opportunity both to voice their views of the proposed settlement and to exclude themselves from the class.   *See Williams*, 2010 U.S. Dist. LEXIS 19674, at *14-15 ("Given that some [] factors cannot be fully assessed until the Court conducts a Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'").

**B. The Proposed Settlement Meets the Requirements for Preliminary Approval**

By their motion, Lead Plaintiffs are only now requesting that the Court take the first step in the settlement review process. To this end,

> [p]reliminary approval of a settlement and notice to the proposed class is appropriate: [i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.

*Williams*, 2010 U.S. Dist. LEXIS 19674, at *15 (citation omitted).[6]

As demonstrated below, the proposed Settlement is a fair result in light of the circumstances present in this Action. Given the complexity of this litigation, the potential difficulty of proving certain elements of the Class' claims, the likely hurdles to achieving a recovery for the Class, and the practical obstacles to obtaining discovery as a result of the international nature of this Action and other factors, the Settlement represents a favorable resolution of this Action and eliminates the risk that the Class might otherwise recover nothing at all. Accordingly, the proposed Settlement satisfies the criteria for preliminary approval and is well within the range of possible approval.

**1.   The Settlement Provides a Favorable Recovery for the Class**

The determination of a "reasonable" settlement "'is not susceptible of a [single] mathematical equation yielding a particularized sum.'" *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir.

---

[6] *See also Young v. Polo Retail, LLC*, No C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. Oct. 25, 2006) ("If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no[] obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.").

1   1997).   Rather, "in any case there is a range of reasonableness with respect to a

2   settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

3   As set forth above, the Settlement provides for a recovery of $10.9 million, to

4   be allocated among Class Members in the Federal and State Action following the

5   deduction of Court-approved fees and expenses as follows: $9.65 million to satisfy

6   claims under the Securities Act (under either the Federal or State Action) and $1.25

7   million to satisfy claims under the Exchange Act.   The gross recovery represents

8   approximately 20% of total Class damages. The recovery of 20% of damages is well

9   above the median percentage of investor losses recovered in securities class action

10  settlements. *See In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal.

11  2008) (approving 6% recovery of maximum damages) (citing *In re Heritage Bond

12  Litig.,* No. 02ML1475, 2005 WL 1594403, at *8-*9 (C.D. Cal. June 10, 2005)

13  (average recovery between 2% to 3% of maximum damages)). *See also Ofcrs. for

14  Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled

15  law that a cash settlement amounting to only a fraction of the potential recovery will

16  not *per se* render the settlement inadequate or unfair"); *Knight v. Red Door Salons,

17  Inc.,* No. 08-01520, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) ("The

18  immediacy and certainty of the settlement award justifies a recovery smaller than the

19  Class Members could seek in the case").

20  Lead Plaintiffs submit that the proposed Settlement is an excellent recovery in

21  light of, *inter alia*, the issues of collectability and recoverability posed by Sientra's

22  history of being in a negative cash position, as well as the difficulty of obtaining

23  discovery in Brazil, where Silimed is located, and the difficulty of recovering certain

24  discovery relating to the Rio de Janeiro facility which was destroyed by a fire soon

25  after contamination of that facility was publicly revealed.   Indeed, given the numerous

26  obstacles and risks to be overcome to achieve such a recovery through litigation and

27  trial, and the attendant corresponding delays, the Settlement amount is well within a

28  range of possible approval.

### 2.   The Risks of Further Litigation Weigh Heavily in Favor of Preliminary Approval

After thorough consideration of the strengths and weaknesses of the claims in this Action, Lead Plaintiffs and Co-Lead Counsel believe that the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Class.  Although Lead Plaintiffs believe the case against Defendants is strong, and that discovery would bolster their claims, they are cognizant of the inherent risks associated with continued litigation, as well as the unique difficulties presented by this case, including issues related to discovery and collectability, as discussed below.

### (a)   Factual and Legal Risks

Although the Court denied Defendants' motions to dismiss and reconsider and held that the CAC adequately alleged scienter, Lead Plaintiffs recognize that proving scienter during summary judgment or at trial, based on a full evidentiary record, could result in a different outcome.  Lead Plaintiffs believe they could establish that Defendants acted knowingly or recklessly in accordance with an "Exclusivity Agreement" which required Silimed to notify Sientra of any regulatory inspections of its Rio de Janiero facility, as well as any adverse findings from any such inspections. Nonetheless, Lead Plaintiffs have also considered Defendants' argument that certain aspects of their conduct are inconsistent with a finding of scienter.  For example, Defendants have argued that the CAC failed to "*alleg[e] with particularity when, how, or even if Defendants were aware of these purported problems* [at Silimed]." Dkt. 72-1 at 1 (emphasis in original); *see also id.* at 10 ("there is not a single particularized fact demonstrating *when* Sientra became aware of any contamination at Silimed, a company 6,400 miles away.") (emphasis in original).  While Lead Plaintiffs believe their narrative is more compelling, it is impossible to ignore the substantial risk that a jury could conclude that Defendants lacked awareness of the problems at Silimed, a completely separate entity from Sientra, located far away in Brazil, that is not named as a defendant in this Action.   Certain limited discovery produced by

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:15-cv-07548-SJO-RAO

1  Defendants could be construed as casting doubt on whether at least some key
2  Defendants were aware of the contamination issues at the Silimed facility prior to the
3  SPO.  Moreover, Defendants have advanced the competing inference that Sientra's
4  products, despite being made at Silimed's Rio de Janeiro facility, actually evaded the
5  contamination.  *See* Dkt. No. 97 at 4.  There have been no public admissions to date
6  that Sientra's products were contaminated and, now that the facility has been
7  destroyed by fire, it will be all the more difficult to establish this one way or the other.
8  If Defendants were to substantiate in discovery that Sientra's products, or the area of
9  the Rio de Janeiro facility making Sientra's products, were not contaminated, it could
10 prove fatal to Lead Plaintiffs' case.

11        Additionally, while Lead Plaintiffs believe that the proposed Class easily meets
12 the requirements for class certification, they also acknowledge that the certification
13 process is costly, time-consuming, and uncertain.  Here, in connection with a motion
14 for class certification, Lead Plaintiffs would expect Defendants to vigorously attack
15 the fraud-on-the-market presumption and market efficiency as it relates to the Class
16 Members with claims under the Exchange Act, in particular.

17        **(b)    Obstacles to Obtaining Discovery**

18        Lead Plaintiffs have also considered the unique obstacles to obtaining discovery
19 posed by the international nature of this Action, as well as Silimed's unique role in
20 these proceedings.  Most significantly, obtaining documents or gathering evidence
21 from witnesses located in Brazil, where Silimed and many key witnesses are located,
22 would likely prove difficult and costly for Lead Plaintiffs.  Brazil is not a party to the
23 Hague Convention on the Taking of Evidence Abroad in Civil and Commercial
24 Matters. The United States is not a party to the evidence provisions of the Inter-
25 American Convention on Letters Rogatory and Additional Protocol.   Brazilian
26 authorities do not permit persons, such as American attorneys, to take depositions for
27 use in a court in the United States before a U.S. consular officer, with the assistance of
28 a Brazilian attorney, or in any other manner.  *See e.g.,* Practicing Law Institute, *Taking*

*Depositions in Brazil*, (2006) (stating that in Brazil, only Brazilian judicial authorities may take depositions, and foreign persons who take depositions may be subject to arrest and detention).

Additionally, on October 22, 2015, a fire destroyed the Rio de Janeiro facility where the contaminated breast implants were made. While discovery has not yet commenced in this Action due to ongoing settlement discussions, it is likely that relevant discoverable information fell victim to the fire, which would obviously further impair Lead Plaintiffs' discovery efforts.

**(c)     Issues of Collectability**

This case also presents issues of collectability and recoverability. Lead Plaintiffs allege Sientra undertook the SPO because it was having financial difficulties and was at risk of default on a $24.5 million loan (which actually occurred after the bad news relating to the Silimed Rio de Janeiro facility was revealed). Additionally, due to Sientra's self-imposed moratorium on selling its products in current inventory until March 2016 (because this inventory was potentially contaminated), and its inability to source new products for sale due to the problems at its sole manufacturing facility in Brazil (including the fire which destroyed the facility making Sientra's products), Sientra's revenues have been severely hampered. Accordingly, Lead Plaintiffs believe there is a substantial risk that Sientra's financial struggles could significantly, and adversely, impact the availability of a substantial recovery to the Class.

**3. The Support of the Settlement by Experienced Counsel Weighs in Favor of Preliminary Approval**

In determining whether the proposed Settlement should be preliminarily approved, the Court should consider Co-Lead Counsel's view that the proposed Settlement is fair, reasonable, and adequate. Courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See, e.g.*, *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901,

1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement).[7]  Here, Co-Lead Counsel are Wolf Popper and Pomerantz, firms with substantial experience and expertise in litigating securities class actions.  *See* Dkt. No. 36-5 & 40-4.   Moreover, it is noteworthy that this proposed Settlement is the result of arm's length negotiations by experienced counsel, after a thorough investigation into the facts of the case, which included an on-the-ground investigation in Brazil, and a highly adversarial, lengthy mediation process before Robert A. Meyer, Esq., who has extensive experience in mediating securities fraud class actions.  *See* https://www.jamsadr.com/meyer/.  Mr. Meyer continued overseeing the arduous negotiations for several weeks after the initial full-day formal mediation session.   The participation of Mr. Meyer in this settlement process is an important factor supporting the procedural and substantive fairness of the proposed Settlement and is a fact which further supports preliminary approval of the Settlement, as well as a decision to permit the Notice to be sent to investors.  *See, e.g.*, *Khanna v. Intercon Sec. Sys. Inc.*, 2014 WL 1379861, at *9 (E.D. Cal. Apr. 8, 2014) ("That the settlement was reached during an outside mediation supports the conclusion that the settlement was not collusive."); *Villegas v. J.P. Morgan Chase & Co.*, No. CV-09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (finding that assistance of an experienced mediator in the settlement process "tends to support the conclusion that the settlement process was not collusive.").

---

[7] *See also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 661, 2010 U.S. Dist. LEXIS 35183, at *70 (N.D. Tex. 2010) ("Because the court is to give significant weight to the opinion of class counsel, it is not routine for a court to overrule a decision that settlement is in the best interest of the class.") (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983)); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *Armstrong v. Board of School Directors*, 616 F.2d 305, 325 (7th Cir. 1980); *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985).

## IV.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The preliminary approval process is also utilized to certify a settlement class when a class has not previously been certified by the court.  The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only as long as the class meets the certification requirements under Rule 23.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  In addition, the class must meet one of the three requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23.  Here, the proposed Class is defined in the Stipulation as all Persons who purchased or otherwise acquired Sientra Common Stock pursuant or traceable to Sientra's secondary offering in September 2015, and all Persons who purchased or acquired Sientra Common Stock during the period May 14, 2015 through and including October 28, 2015 and were damaged thereby.

Courts have generally found securities claims to be particularly well-suited for class treatment because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims who otherwise would effectively be barred from litigation.  *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  This action is no exception and, as explained below, the proposed Class satisfies each of the requirements of Rule 23.

### A.    Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  Classes consisting of 25 members have been held to be large enough to justify certification.  *See Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *see also In re Cirrus Logic Sec.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994).  Additionally, the exact size of the

class need not be known so long as general knowledge and common sense indicate that the class is large.  *See Cirrus Logic*, 155 F.R.D. at 656; *see also Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification[.]") (citations omitted).

Here, millions of shares of Sientra Common Stock were traded during the Class Period.  In addition, beneficial holders of these securities are believed to number in the thousands and are geographically located throughout the United States, making joinder of all Class Members impracticable.  Thus, the numerosity element is satisfied.

**B.    Commonality**

Rule 23(a)(2) is satisfied where the proposed class representative shares at least one question of fact or law with the claims of the prospective class.  *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).  Further, there may be varying fact situations among individual members of the class as long as the claims of the plaintiff and other class members are based on the same legal or remedial theory.  *Blackie*, 524 F.2d at 902.  Here, questions that are common to the proposed Class include, among others: (i) whether Defendants' alleged acts violated the federal securities laws; (ii) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the contamination at Silimed; (iii) whether the price of Sientra Common Stock was artificially inflated during the Class Period; and (iv) to what extent the Class Members have sustained damages and the proper measure of such damages.

Securities actions containing common questions such as the ones listed above have repeatedly been held to be prime candidates for class certification.  In short, because the core complaint of all class members is that they purchased Sientra Common Stock at artificially inflated prices, and suffered damages as a result of the alleged securities violations, the commonality requirement of Rule 23(a)(2) is satisfied.  *See In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 635 (S.D. Cal. 2008) (finding "core issue" in a securities litigation to be plaintiffs' acquisition of

20

"[defendant's] common stock at artificially inflated prices").

## C.    Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted).  Differences in the amount of damages, the size or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class certification.  *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991).  In other words, typicality exists "even where factual distinctions exist between the claims of the named representative and the other class members." *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).  The typicality requirement recognizes that a class representative "with claims typical of the class will, in pursuing and defending his own self-interest in the litigation, be concomitantly advancing or defending the interests of the class."  *Dubin v. Miller*, 132 F.R.D. 269, 274 (D. Colo. 1990).

Here, Lead Plaintiffs' and the Class Members' claims arise from the same alleged conduct by Defendants.  Lead Plaintiffs allege that, like the other members of the Class, they purchased Sientra at prices that were inflated because Defendant, in violation of the federal securities laws, issued false and materially misleading statements and/or omissions during the Class Period.  The proof that Lead Plaintiffs would present to establish their claims would also prove the claims of the rest of the Class.  *See In re Intelcom Grp., Inc., Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996) (finding typicality in securities class action where major issue presented was "whether the Defendants have violated the federal securities laws").  Further, Lead Plaintiffs are not subject to any unique defenses that could make them atypical members of the Class.

## D.    Adequacy

A representative party satisfies Rule 23(a)'s adequacy requirement by showing that it will fairly and adequately protect the interests of the class.  To satisfy this requirement, the proposed class representative must be free of interests that are antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced, and capable of conducting the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) (citation omitted); *Hanlon*, 150 F.3d at 1020.

Here, as described above, Lead Plaintiffs' claims are typical of, and coextensive with, those of the Class.  Lead Plaintiffs, like all Class Members, purchased Sientra Common Stock at artificially inflated prices during the Class Period as a result of Defendants' alleged materially false and misleading statements and/or omissions, and were damaged thereby.

Further, Lead Plaintiffs have retained counsel highly experienced in securities class action litigation, who have successfully prosecuted many securities and other complex class actions throughout the United States.  Thus, Lead Plaintiffs are adequate representatives of the proposed Class, and their counsel are qualified, experienced, and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

### E.   Common Questions of Law Predominate and a Class Action Is the Superior Method of Adjudication

Finally, in addition to the four requirements of Rule 23(a), a class must also satisfy one of the three requirements of Rule 23(b).  Here, little question exists that a class action is superior to other available methods for litigation of the claims asserted here, as required by Rule 23(b)(3).  To ensure that the class action is more efficient than individual actions, Rule 23(b) requires that common issues predominate over issues that are particular to a class representative.  Generally, common questions will predominate if the common issue constitutes a significant part of each of the class members' individual cases.  "[C]ommon issues need only predominate, not outnumber individual issues." *In re Inter-Op Hip Prosthesis, Liab. Litig.*, 204 F.R.D. 359, 374-

75 (N.D. Ohio 2001).  Further, "the superiority of class actions in large securities
fraud [matters] is well recognized."  *Intelcom*, 169 F.R.D. at 149.  The predominance
test is met in this action: the same set of operative facts (outlined above) and a single
proximate cause applies to each Class Member.  Further, the fact that a class action is
the superior method to efficiently and effectively pursue the claims alleged here is
shown by the fact that if Lead Plaintiffs and each of the Class Members were to bring
individual actions, they each would be required to prove the same wrongdoing by
Defendants to establish liability.  *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d
Cir. 1985) (class actions are a particularly appropriate and desirable means to resolve
claims based on securities laws).

In light of the foregoing, all of the requirements of Rule 23(a) and (b) are
satisfied and the Court should certify the proposed Class for settlement purposes and
appoint Lead Plaintiffs as the Class representatives, and Co-Lead Counsel as Co-Lead
Counsel for the Class.

## V. THE PROPOSED NATURE AND METHOD OF CLASS NOTICE SHOULD BE APPROVED

Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure requires that notice of
a settlement be "the best notice that is practicable under the circumstances, including
individual notice to all members who can be identified through reasonable effort."
*See also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable
manner to all class members who would be bound by the propos[ed settlement].").
"Notice is satisfactory if it 'generally describes the terms of the settlement in
sufficient detail to alert those with adverse viewpoints to investigate and to come
forward and be heard.'"  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir.
2009) (internal citation omitted).[8]

---

[8] *See also Sandoval v. Tharaldson Emp. Mgmt., Inc.*, Case No. EDCV 08-482-VAP
(OPx), 2010 U.S. Dist. LEXIS 69799, at *29 (C.D. Cal. June 15, 2010) ("The notice

Here, the Parties in both the Federal and State Actions negotiated the unitary form of the Notice to be disseminated in both Actions to all Persons and entities who fall within the definition of the Class and whose names and addresses have been or can be identified through Sientra's transfer records and shareholder information.  In addition, the Claims Administrator will mail copies of the Notice to entities which commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers of the securities.  The Parties further propose to supplement the mailed Notice with the Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice") – an additional description of the Action and proposed Settlement, to be published in *The Wall Street Journal* and *BusinessWire*.[9]  Co-Lead Counsel will also make copies of the Notice and Proof of Claim available for download via the website created for the Settlement, www.sientrashareholderlitigation.com.

The address for the website is set forth in both the Notice and Summary Notice. In addition to providing access to the Notice and Summary Notice, the website will provide copies of the operative complaint and other important pleadings, as well as important information regarding the Actions and the proposed Settlement.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  The proposed Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Co-Lead Counsel will apply to the

---

must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007) (same).

[9] The proposed Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3, respectively.

1  Court for attorneys' fees in an amount not to exceed a total (collectively, in both the

2  Federal and State Actions) of twenty-five (25%) percent of the $10.9 million

3  Settlement amount, and for reimbursement of reasonable litigation expenses not to

4  exceed $75,000, to be paid from the Settlement Fund.  It also notifies Class Members

5  that Lead Counsel intends to apply for a Compensatory Award for the time and

6  expenses incurred by each Lead Plaintiff, not to exceed $5,000 per Lead Plaintiff.

7         The proposed Notice includes all of the information required by the PSLRA, as

8  well as additional information.[10]  The proposed Notice describes the proposed

9  Settlement and sets forth, among other things: (1) the nature, history, and status of the

10 litigation; (2) the definition of the Court-certified Class and who is excluded; (3) the

11 reasons the Parties have proposed the Settlement; (4) the amount of the Settlement

12 Fund; (5) the estimated average distribution per damaged share; (6) the Class's claims

13 and issues; (7) the Parties' disagreement over damages and liability; (8) the maximum

14 amount of attorneys' fees and expenses that Co-Lead Counsel intends to seek in

15 connection with final Settlement approval; (9) the maximum amount Lead Plaintiffs

16 will request for reimbursement of costs and expenses (including lost wages); (10) the

17 plan for allocating the Settlement proceeds to the Class; and (11) the date, time and

18 place of the final Settlement hearing.

19        Further, the proposed Notice discusses the rights Class Members have in

20

21 [10] Specifically with respect to cases filed under the PSLRA, notices of settlements
   must state: (1) "[t]he amount of the settlement proposed to be distributed to the parties
22 to the action, determined in the aggregate and on an average per-share basis;" (2) "[i]f
   the parties do not agree on the average amount of damages per share that would be
23 recoverable if the plaintiff prevailed on each claim alleged under this chapter [], a
   statement from each settling party concerning the issue or issues on which the parties
24 disagree;" (3) "a statement indicating which parties or counsel intend to make []an
   application [for attorneys' fees or costs], the amount of fees and costs that will be
25 sought (including the amount of such fees and costs determined on an average per
   share basis), and a brief explanation supporting the fees and costs sought;" (4) "[t]he
26 name, telephone number, and address of one or more representatives of counsel for
   the plaintiff class who will be reasonably available to answer questions from class
27 members;" and (5) "[a] brief statement explaining the reasons why the parties are
   proposing the settlement." 15 U.S.C. § 78u-4(a)(7).

28

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:15-cv-07548-SJO-RAO

connection with the Settlement, including (1) the right to request exclusion from the Class and the manner for submitting a request for exclusion; (2) the right to object to the Settlement, or any aspect thereof, including the Fee Request, and the manner for filing and serving an objection; and (3) the right to participate in the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims Administrator.  The Notice also provides contact information for Co-Lead Counsel and counsel for Defendants, as well as the postal address for the Court.

As detailed above, the Notice program proposed in connection with the Settlement and the form and content of the Notice and Summary Notice more than satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA.  Accordingly, in granting preliminary approval of the Settlement, Lead Plaintiffs respectfully request that the Court also approve the proposed form and method of giving notice to the Class.

## VI.    PROPOSED SCHEDULE OF EVENTS

If the Court grants preliminary approval to the proposed Settlement, Lead Plaintiffs respectfully propose the following procedural schedule:

| Event | Proposed Time for Compliance |
|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class Members ("Notice Date") | 30 calendar days after entry of the Order for Notice and Hearing, attached as Exhibit A to the Stipulation |
| Deadline for publishing the Summary Notice | 10 calendar days after the Notice Date |
| Deadline for submitting Proofs of Claim and Release forms | 150 calendar days after the Notice Date |
| Deadline for filing papers in support of final settlement approval, request for attorneys' fees, and reimbursement of expenses | 28 calendar days before the Settlement Final Approval Hearing |
| Deadline for requesting exclusion from the Class or filing an objection to the Settlement, request for attorneys' fees, or request for reimbursement of expenses | 14 calendar days before the Settlement Final Approval Hearing |

26

| Deadline for filing of memoranda in response to any objections to the Settlement | 7 calendar days before the Settlement Final Approval Hearing |
| Settlement Final Approval Hearing | Approximately 100 calendar days after the Notice Date, or later at the Court's convenience |

## VII.  CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court enter the proposed Order Preliminary Approving Settlement and Providing for Notice and Hearing, which will: (i) preliminarily approve the Settlement; (ii) certify the proposed Class for settlement purposes only; (iii) approve the form and manner of giving notice of the Settlement to the Class; and (iv) set a hearing date and time to consider final approval of the Settlement and related matters and establish a schedule for various deadlines in connection with the Settlement.

Respectfully submitted this 20th day of December 2016.

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Lionel Z. Glancy*
Lionel Z. Glancy
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: lglancy@glancylaw.com

*Liaison Counsel for Lead Plaintiffs*

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6449
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile: (212) 661-8665
Email:  jalieberman@pomlaw.com
            ahood@pomlaw.com
            mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Leigh Handelman Smollar
Louis C. Ludwig
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
E-mail: pdahlstrom@pomlaw.com
            lsmollar@pomlaw.com
            lcludwig@pomlaw.com

**WOLF POPPER LLP**
Chet B. Waldman
Andrew E. Lencyk
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: (212) 759-4600
E-mail: cwaldman@wolfpopper.com
            Alencyk@wolfpopper.com

***Lead and proposed Class Counsel***

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:15-cv-07548-SJO-RAO

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On December 20, 2016, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 20, 2016, at Los Angeles, California.


_s/ Lionel Z. Glancy_
Lionel Z. Glancy

# Mailing Information for a Case 2:15-cv-07548-SJO-RAO John M Flynn v. Sienta, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ryan E Blair**
  rblair@cooley.com,chourani@cooley.com

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com

- **Koji F Fukumura**
  kfukumura@cooley.com,chourani@cooley.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Leigh R Handelman**
  lsmollar@pomlaw.com

- **J Alexander Hood**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com

- **Louis C Ludwig**
  lcludwig@pomlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Lesley F Portnoy**
  LPortnoy@glancylaw.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Charlene Sachi Shimada**
  charlene.shimada@morganlewis.com

- **Craig Edward TenBroeck**
  ctenbroeck@cooley.com,maraujo@cooley.com

- **Chet B Waldman**
  cwaldman@wolfpopper.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)