Lionel Z. Glancy (SBN 134180)
Robert V. Prongay (SBN 270796)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

[Additional Counsel on Signature Page]

*Liaison Counsel for Lead Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN M. FLYNN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SIENTRA, INC., HANI ZEINI, MATTHEW PIGEON, NICHOLAS SIMON, TIMOTHY HAINES, R. SCOTT GREER, KEVIN O'BOYLE, JEFFREY NUGENT, PIPER JAFFRAY & CO., STIFEL, NICOLAUS & CO., INC., LEERINK PARTNERS LLC., and WILLIAM BLAIR & CO., L.L.C.,<br><br>Defendants. | No. 2:15-cv-07548-SJO-RAO<br><br>**NOTICE OF MOTION AND MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 22, 2017<br>Time: 10:00 a.m.<br>Judge: Hon. S. James Otero<br>Dept.: 1 |

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that, pursuant to an Order of the Court issued on January 23, 2017, on May 22, 2017 at 10:00 a.m., or as soon thereafter as counsel may be heard, at the United States District Court for the Central District of California, 350 W. 1st Street, Los Angeles, California, before the Honorable S. James Otero, Lead Plaintiffs Quad Development LLC and John M. Flynn (collectively, "Lead Plaintiffs") will move for an order approving the settlement of this Action and dismissing it with prejudice.

This motion is supported by the accompanying Memorandum of Points and Authorities; the Joint Declaration of Chet B. Waldman and Leigh H. Smollar in Support of Lead Plaintiffs' Motion and supporting exhibits ("Joint Decl."), filed herewith; the Declaration of Carole K. Sylvester Regarding (a) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form, (b) Publication of the Summary Notice, (c) Internet Posting, and (d) Requests for Exclusion Received to Date  ("Sylvester Decl."), filed herewith; the Motion and Memorandum of Law in Support of Attorneys' Fees and Reimbursement of Expenses and exhibits in support thereof, filed herewith; the parties' Stipulation of Settlement ("Stipulation"); and all other pleadings and papers filed in this action.

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.     Whether the Settlement, on the terms and conditions provided for in the Stipulation, should be finally approved by the Court as fair, reasonable, and adequate.

2.     Whether the Class meets the requirements of Federal Rule of Civil Procedure 23.

3.     Whether the Plan of Allocation is fair, reasonable, and adequate.

4.     Whether the notice program satisfied due process and complied

ii

1  with Fed. R. Civ. P. 23(e).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ------------------------------------------ ii

STATEMENT OF ISSUES TO BE DECIDED -------------------------------- iii

TABLE OF CONTENTS ------------------------------------------------------ iv

TABLE OF AUTHORITIES -------------------------------------------------- vi

MEMORANDUM OF POINTS AND AUTHORITIES --------------------- 1

   I.  INTRODUCTION ----------------------------------------------------- 1

   II. BACKGROUND---------------------------------------------------- 2

     A. Procedural History  ------------------------------------------- 3

     B. Preliminary Approval And Notice  -------------------------- 4

   III.. APPLICABLE STANDARDS FOR FINAL APPROVAL OF CLASS
      ACTION SETTLEMENTS -------------------------------------- 5

   IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE
      SETTLEMENT AND CERTIFY THE SETTLEMENT CLASS ---- 7

     A. The Settlement Is Fair, Reasonable And Adequate ----------------- 7

       1. The Overall Strength of Plaintiffs' Case, Including the Risk,
         Expense, Complexity, and Likely Duration of Further Litigation,
         Supports Final Approval of the Settlement ---------------------- 8

       2. The Risks of Continued Litigation Weigh Heavily in Favor of
         Settlement------------------------------------------------------ 9

       3. The Settlement Represents a Significant Portion of Provable
         Damages ----------------------------------------------------- 12

       4. The Amount of Discovery Completed and the Stage of the
         Proceedings Support Approval of the Settlement -------------- 13

       5. Experienced Counsel Concur that the Settlement, Which Was
         Negotiated in Good Faith and at Arm's Length, is Fair, Reasonable,
         and Adequate  --------------------------------------------- 13

       6. The Absence of a Governmental Participant --------------------- 15

       7. The Reaction of the Class Members Supports Approval of the
         Settlement---------------------------------------------------- 15

     B. Final Certification Of The Class Should Be Granted -------------- 15

iv

1. The Class Meets the Requirements of Rule 23(a) --------------- 16

2. The Class Meets the Requirements of Rule 23(b)(3) ----------- 16

C. The Proposed Plan Of Allocation Is Fair, Reasonable And Adequate And Should Be Approved  --------------------------------------------- 17

D. The Notice Program Satisfied Due Process And Complied With Fed.R.Civ.P.23(e) -------------------------------------------------- 18

1. The Dissemination Plan Satisfies Due Process  ---------------- 19

2. The Contents of the Notice Satisfy Due Process ---------------- 19

V. CONCLUSION ------------------------------------------------------ 20

NOTICE OF MOTION & MOTION ISO FINAL APPROVAL
No. 2:15-cv-07548-SJO-RAO

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)......................................... 17

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) ............................ 11

*Booth v. Strategic Realty Trust, Inc.*, No. 13-CV-04921-JST, 2015 U.S. Dist. LEXIS 84143 (N.D. Cal. June 28, 2015)  ...................................................9

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)  ..........................6

*Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002 (N.D. Cal. June 27, 2014) ..................................................................10

*Churchill Village, L.L.C. v. Gen. Electric*, 361 F.3d 566 (9th Cir. 2004).......8

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............6, 17

*Colesberry v. Ruiz Food Products, Inc.*, No. CV F 04-5516, 2006 U.S. Dist. LEXIS 45024 (E.D. Cal. Jun. 30, 2006) ......................................................19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................19

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980)............. 14

*Flynn v. Sientra, Inc.*, CV 15-07548 SJO (RAO), 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016) .......................................................................4

*Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981) ................................. 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................... 8, 15

*Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) .....11

*Hughes v. Microsoft Corp.*, No. C98-1646C, C93-0178C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001) .....................................................7

*In re Amgen Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, *5 (C.D. Cal. Oct. 25, 2016) ........................................................8

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) .............................12

*In re ECOtality, Inc. Sec. Litig.*, No. 13-CV-03791-SC, 2014 U.S. Dist. LEXIS 130499 (N.D. Cal. Aug. 28, 2015) ..................................................................9

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .........................................................9, 12, 17, 18

*In Re Mego Fin. Corp.*, 213 F.3d 454 (9th Cir. 2000)  ....................10, 11, 15

*In re NASDAQ Market-Makers Antitrust Litig.*, 94 Civ. 3996 (RWS), 2000 U.S. Dist. LEXIS 304 (S.D.N.Y. Jan. 18, 2000) ................................................17

NOTICE OF MOTION & MOTION ISO FINAL APPROVAL
No. 2:15-cv-07548-SJO-RAO

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) *passim*

*In re Oracle Sec. Litig.*, No. C-90-0931 VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. Jun. 18, 1994) ................................................................................18

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........................... 7

*In re Painewebber Ltd. P'ships. Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)... 14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) .............................................................................13

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y. 1999) ............... 12

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ......................6, 11

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).......... 13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................6

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) ..........19, 20

*McPhail v. First Command Fin. Planning, Inc.*, No. 05-171-IEG, 2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) ................................................6

*Mendoza v. United States*, 623 F.2d 1338 (9th Cir. 1980) ...........................19

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 11, 14

*Nobles v. MBNA Corp.*, No. C 06-3723-CRB, 2009 U.S. Dist. LEXIS 59435 (N.D. Cal. June 29, 2009)..............................................................................  10

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ............................................................6, 7, 17

*Riker v, Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 U.S. Dist. LEXIS 120841 (D. Nev. Oct. 28, 2010) ...................................................................14

*Rodriguez v. West Publ'g Corp.,* 563 F.3d 948 (9th Cir. 2009) .....................9

*Rodriguez v. West Publ'g Corp.*, Case No. CV-05-3222 R(MCx), 2007 U.S. Dist. LEXIS 74849 (C.D. Cal. Aug. 10, 2007) ...........................................19

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ...6, 8, 18, 19

*Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437 (9th Cir. 1989) ...............................................................................  6

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)....................  6

*White v. NFL*, 822 F. Supp. 1389 (D. Minn. 1993) ......................................17

NOTICE OF MOTION & MOTION ISO FINAL APPROVAL
No. 2:15-cv-07548-SJO-RAO

**Rules and Statutes**

Fed. R. Civ. P. 4(f)(3) ........................................................................ 4

Fed. R. Civ. P. 23 ..................................................................*passim*

11 U.S.C. § 362 .................................................................... 4

Private Securities Litigation Reform Act ("PSLRA") § 78u-4(a)(7)........... 23

**Other**

MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995) .......................17

4 A. Conte & H.B. Newberg, *Newberg on Class Actions* §11:42 (4th ed. 2002) ...............................................................18

NOTICE OF MOTION & MOTION ISO FINAL APPROVAL
No. 2:15-cv-07548-SJO-RAO

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

## **I.    INTRODUCTION**

3

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs

4

respectfully request that this Court grant final approval of the proposed settlement

5

reached in the Action between Lead Plaintiffs on behalf of the Class, and Defendants.[1]

6

After extensive litigation including substantial investigations leading to the

7

filing of two detailed complaints, full briefing on Defendants' motions to dismiss and

8

motions for reconsideration, full analysis of legal and factual issues impacting this

9

Action, and fully adversarial settlement negotiations conducted under the supervision

10

of a distinguished mediator, Lead Plaintiffs and Defendants entered into a Stipulation

11

setting forth the terms of the settlement of the claims asserted in the Action.  Under

12

the terms of the Settlement, a Settlement Fund was created for the benefit of the Class

13

which consists of $10.9 million in cash.  In accordance with Section 2.1 of the

14

Stipulation, the Settlement Fund has been delivered to the Escrow Agent.

15

On January 23, 2017, the Court signed an Order of Preliminarily Approval (the

16

"Order"), Dkt. No. 116, and set a hearing date for final approval of the Settlement of

17

May 22, 2017.  Pursuant to the Order, beginning on February 6, 2017, approximately

18

10,600 notice packets detailing the terms of the Settlement were mailed to potential

19

Class Members and shareholders of record.  Sylvester Decl., ¶ 12.  The summary

20

notice was published over *The Wall Street Journal* and *BusinessWire* on February 14,

21

2017 and all relevant settlement papers, including the notice and Proof of Claim form,

22

have been available online at www.sientrashareholderlitigation.com.   The Claims

23

Administrator also established a telephone hotline for potential Class Members with

24

questions about the Settlement.  *Id.*, ¶ 15. To date, no Class Members have objected to

25

the Settlement or excluded themselves from the Class. *Id.*, ¶ 16.

26

_____

27

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in

28

the Stipulation.

As discussed below, the Settlement, which provides a meaningful recovery in the face of substantial risks of litigation, is fair, reasonable, adequate, and meets the relevant criteria for approval.  Moreover, the fairness and adequacy of the Settlement is evidenced by the fact that in response to Lead Plaintiffs' comprehensive program of notice, which advised Class Members of their rights, no Class Member has objected to date.[2]  Accordingly, Lead Plaintiffs respectfully request that the Settlement and Plan of Allocation be approved by this Court, the Settlement Class certified, and the proposed Order of Final Approval and Final Judgment (Exhibit A hereto) be entered.

## II.    BACKGROUND

Lead Plaintiffs bring this Action on behalf of all persons or entities that purchased or otherwise acquired Sientra Common Stock (as defined in ¶ 1.7 of the Stipulation) pursuant or traceable to Sientra's secondary offering in September 2015, and all Persons who purchased or acquired Sientra Common Stock during the period May 14, 2015 through and including October 28, 2015. Lead Plaintiffs' Consolidated Amended Class Action Complaint for Violation of Federal Securities Laws (the "Complaint") (Dkt. No. 56) alleges that Defendants made materially false and/or misleading statements to investors regarding the contamination of breast implants sold by Sientra.  All such breast implants were manufactured by Silimed Indústria de Implantes Ltda. ("Silimed"), in a single facility, in Rio de Janeiro, Brazil, where the contamination occurred.  Sientra operated as Silimed's sole distributor in the U.S.

The Complaint alleges that during the spring and summer of 2015, European health regulators and Silimed itself confirmed that the breast implants manufactured in Silimed's facility were contaminated with foreign particulates.  Plaintiffs allege that despite this information, which was unknown to the investing public, Sientra

---

[2] To date, no Class Member has voiced any objection to either the fairness of the Settlement, or the requests for fees and reimbursement of expenses.  The deadline for filing any such objection is May 8, 2017.  To the extent any such objections are filed, Co-Lead Counsel will respond to each such filing by May 15, 2017.

conducted a secondary public stock offering ("SPO") between September 14, 2015 and September 23, 2015.   The SPO Registration and Prospectus ("Offering Documents") attested to Sientra's primary responsibility for manufacturing and quality control of its products, including inspections of all product shipments received from Silimed.  The Complaint further alleges that the SPO Offering Documents spoke to issues regarding the manufacturing of Sientra's products at Silimed's Rio facility, including compliance with regulatory requirements, and current good manufacturing practices ("cGMP"), without disclosing the widespread contamination that had been found by European regulators and confirmed by Silimed months before the SPO. Ultimately, the SPO raised more than $65 million, with the SPO priced at $22 per share, well above Sientra's $15 per share IPO price less than a year earlier.

News about the contamination was publicly revealed by the European regulators shortly after the SPO closed, immediately causing Sientra's share price (including existing stock not issued in the SPO) to drop by more than 50%.  Plaintiffs allege that subsequent revelations that Sientra would suspend all product sales and that several of its top executive officers would resign caused further price declines.

Defendants have denied the claims and allegations in the Complaint.  If this Action proceeded, Lead Plaintiffs expect that Defendants, based in California, would argue, among other things, that they were unaware of the contamination at the Silimed plant in Brazil until after the SPO had closed.

### A.   Procedural History

Following their appointment on December 10, 2015 to lead this litigation (the "Federal Action") on behalf of the putative class, Dkt. No. 44, Lead Plaintiffs conducted an extensive investigation into the claims asserted in this Action which included reviewing and analyzing Sientra's public filings; investigating and analyzing the intricate relationship between Sientra and Silimed; locating, contacting, and interviewing witnesses and other investigatory work in the United States and Brazil; reviewing the docket in the related State Action; reviewing and analyzing relevant

news articles and the reports of analysts following the Company; and consulting with experts on the issues of loss causation and damages. Lead Plaintiffs filed a consolidated amended class action complaint on February 19, 2016, Dkt. No. 56.

Motions to dismiss the Complaint were filed on March 21, 2016. Dkt. Nos. 72 & 74.  Lead Plaintiffs opposed the motions on April 20, 2016.  On June 9, 2016, the Court denied, in substantial part, Defendants' motions to dismiss.  Dkt. No. 90; *Flynn v. Sientra, Inc.*, CV 15-07548 SJO (RAO), 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016).  In particular, the Court upheld Lead Plaintiffs' claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Defendants Sientra, Zeini, and Pigeon, as well as their Section 11 and 12(a)(2) claims against the Underwriter Defendants.  2016 U.S. Dist. LEXIS 83409, at **40, 42, 55.  The Court did, however, shorten the length of the Class Period by approximately four months. *Id*. at *36.

Following the Court's partial denial of the motions to dismiss, Defendants moved for reconsideration, Dkt. No. 94, which motion was fully briefed by the parties. The Court denied the motion for reconsideration on August 12, 2016.  Dkt. No. 97.

After the Court's decision on the motions to dismiss, the Parties agreed to mediation in an attempt to resolve the Action. On July 5, 2016, the Parties participated in a day-long mediation presided over by experienced mediator, Robert Meyer.  Many weeks after the mediation session, after further negotiations with the aid of the mediator, the parties reached an agreement-in-principle to settle both the State and Federal Actions.  Joint Decl. ¶ 33.   The Parties engaged in substantial negotiations and limited discovery over the next several months before finalizing the Settlement papers and executing the Stipulation on December 16, 2016.  At all times, the Parties' negotiations were at arm's length and in good faith.  *Id.*, ¶ 34.

## B.   Preliminary Approval And Notice

On December 21, 2016, Lead Plaintiffs moved the Court for an order granting preliminary approval to the Settlement and directing dissemination of an approved

4

notice of settlement to the Class.  Dkt. No. 107.  On January 23, 2017, the Court entered the Order, preliminarily approving the Settlement and approving the form of notice.  Dkt. No. 117. Beginning on February 6, 2017, the Claims Administrator, Gilardi & Co. LLC ("Gilardi"), began mailing notice packets to Class members.  *See* Sylvester Decl. ¶¶ 5-7.  As of April 21, 2017, Gilardi has received more than 4,023 names and addresses of potential Class Members (after exact duplicate mailing records were removed) from individuals, brokers, dealers, banks and other nominees requesting that notice packets be mailed to such persons.  *Id.*, ¶ 11.  Also, Gilardi has received requests from brokers and other nominees for 1,000 notice packets to be sent to such brokers and nominees so that they could forward them to their customers.  *Id.* All such requests have been complied with in a timely manner.  As a result of the efforts described above, as of April 21, 2017, Gilardi has mailed a total of 10,600 notice packets.  *Id*. at ¶ 12. In addition, Gilardi caused the approved summary notice to be published in *The Wall Street Journal* and *BusinessWire* on February 14, 2017. *Id.*, ¶ 8.

Furthermore, Gilardi established and continues to maintain a toll-free telephone number to accommodate potential Class Members with questions about the Settlement or matters related to it. Finally, in coordination with Co-Lead Counsel, Gilardi designed and implemented a website, www.sientrashareholderlitigation.com, dedicated to the Settlement to assist potential Class Members.  *Id.*, ¶ 14.   The website was operational beginning on February 6, 2017.  *See id*.  Posted on the website are relevant Court documents, including the Stipulation of Settlement and Order of Preliminary Approval, as well as the notice and Proof of Claim form, all of which may be downloaded by potential Class Members.  *Id.*

## III.   APPLICABLE STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in this Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv.*

*Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  An "overriding public interest" exists in settling litigation, and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

In deciding whether to approve a proposed settlement pursuant to Federal Rule of Civil Procedure 23(e), the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits"); *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.") (citing *Class Plaintiffs*, 955 F.2d at 1276).

The determination of fairness falls within the "sound discretion" of the district court. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375-76 (9th Cir. 1993). However, courts recognize that a strong initial presumption of fairness applies where, as here, the settlement is reached by experienced counsel after arm's length negotiations.  *See McPhail v. First Command Fin. Planning, Inc*., No. 05-171-IEG, 2009 U.S. Dist. LEXIS 26544, at *16 (S.D. Cal. Mar. 30, 2009); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (finding that "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

The Ninth Circuit has placed limits on the inquiry to be made by the court in considering a settlement.  The court in *Officers for Justice* held that a:

6

> [F]airness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

688 F.2d at 625 (citations omitted).

Here, it is the considered judgment of Co-Lead Counsel that this Settlement provides for a fair, reasonable and adequate resolution of the litigation and thus, should be entitled to a presumption of reasonableness.  *See Hughes v. Microsoft Corp.*, No. C98-1646C, C93-0178C, 2001 U.S. Dist. LEXIS 5976, *20 (W.D. Wash. Mar. 26, 2001).  This presumption of reasonableness is further strengthened because the arm's-length negotiating process involved a mediator experienced in such cases. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (finding mediator's involvement supports settlement approval).

Thus, Lead Plaintiffs request the Court find the Settlement "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e).  As demonstrated below, the factors cited by the Ninth Circuit support Settlement approval here.

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AND CERTIFY THE SETTLEMENT CLASS

### A.   The Settlement Is Fair, Reasonable And Adequate

To determine whether a proposed settlement is fair, reasonable and adequate, a court may consider "some or all" of the following factors: (1) the strength of the plaintiffs' case, including the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status through trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; (6) the presence of a governmental participant; and (7) the reaction of the class members to the proposed

7

settlement.  *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see also In re Amgen Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, *5 (C.D. Cal. Oct. 25, 2016).

"This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi*, 8 F.3d at 1376 (citation omitted).  An analysis of each of these factors demonstrates that the Settlement is fair, adequate, and reasonable.

### 1. The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

Co-Lead Counsel, who have a great deal of experience litigating and resolving complex securities class actions, carefully evaluated the merits of this case, in light of all of the risks and potential weaknesses, well before Lead Plaintiffs entered into the Settlement.  *See* Joint Decl. ¶¶ 50-60.  Lead Plaintiffs and Co-Lead Counsel conducted a thorough investigation of the claims, including a detailed review of Sientra's public filings with the SEC, Sientra's press releases and transcripts from quarterly earnings calls and investment conference appearances, industry publications, numerous publications in multiple countries about the manufacturing problems at Silimed's Rio facility, and a broad review of media, analyst and news reports about the Company, and other publicly-available data, including trading data relating to the price and trading volume of Sientra's publicly-traded securities.  *Id.* at ¶ 63.  Further, Lead Plaintiffs' investigators in Brazil and the U.S. interviewed a number of individuals and conducted searches which added to Plaintiffs' base of knowledge of the relevant facts.   In addition, Co-Lead Counsel analyzed certain documents produced by Defendants bearing on the key issues in the Action.  *Id.*

While Lead Plaintiffs believe that the case is strong based on the research and investigation conducted, they also acknowledge the substantial risk posed to the Class in continuing this Action.  Lead Plaintiffs also considered that a class certification

motion would be contested, and a class might not be certified, given that Defendants would likely contest the fraud-on-the-market presumption and market efficiency, particularly as it relates to Class Members with claims under the Exchange Act.

Even if certified, the Class could lose at the summary judgment stage to attacks regarding loss causation, scienter, liability, or damages. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *24 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced") (citations omitted); *Omnivision*, 559 F. Supp. 2d at 1041. Further, Lead Plaintiffs anticipate that during trial Defendants' counsel would portray Sientra as a sympathetic company that was kept in the dark by Silimed, a separate company with separate management, located thousands of miles away in a foreign country.

Further, even if Lead Plaintiffs were to prevail at trial, Defendants could appeal the decision and the outcome of that appeal would be uncertain. Finally, any adverse determination in the State Action, either at the trial court level or on appeal, could negatively impact the Class's recovery going forward.

### 2. The Risks of Continued Litigation Weigh Heavily in Favor of Settlement

The risk posed by continued litigation is a threshold factor in determining whether a settlement should be approved. *In re ECOtality, Inc. Sec. Litig.*, No. 13-CV-03791-SC, 2014 U.S. Dist. LEXIS 130499, at *8-9 (N.D. Cal. Aug. 28, 2015); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *Booth v. Strategic Realty Trust, Inc.*, No. 13-CV-04921-JST, 2015 U.S. Dist. LEXIS 84143, *23-24 (N.D. Cal. June 28, 2015). The Court must balance the risks of continued litigation against the benefits to the Class and the immediacy and certainty of a substantial recovery. *In Re Mego Fin. Corp.*, 213 F.3d 454, 458 (9th Cir. 2000); *Omnivision Techs.*, 559 F. Supp. 2d at 1046.

Although Co-Lead Counsel believes this case is meritorious, the risks discussed in their preliminary approval papers and below render the outcome of lengthy litigation and trial extremely uncertain. *See Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002, at *13 (N.D. Cal. June 27, 2014) (In general, "acceptance and approval" of settlement is "preferable to lengthy and expensive litigation with uncertain results."). Careful consideration of the litigation risks supports approval of the Settlement as fair, adequate and reasonable. *See Nobles v. MBNA Corp.*, No. C 06-3723-CRB, 2009 U.S. Dist. LEXIS 59435, at *5 (N.D. Cal. June 29, 2009) (deferring to the "reasoned judgment" of class counsel" in opting to settle, although the class might have achieved greater recovery in taking the case to trial).

If the litigation continued, Lead Plaintiffs would be tasked with obtaining discovery in the United States and Brazil, which is not a party to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters. Further, Brazilian authorities do not permit persons, such as American attorneys, to take depositions for use in a court in the United States before a U.S. consular officer, with the assistance of a Brazilian attorney, or in any other manner. Moreover, on October 22, 2015, a fire destroyed the facility where the contaminated breast implants were made. This suspicious fire likely claimed relevant discoverable information in this Action. Even if Lead Plaintiffs were able to obtain further evidence in Brazil and elsewhere, they faced considerable risk at trial. Sientra would almost certainly attempt to position himself as a victim, rather than a perpetrator, of fraud or misrepresentation, by Silimed, which is located far away in Brazil and is not named as a defendant in the Action. Furthermore, Defendants have advanced the competing inference that Sientra's products, despite being made at Silimed's Rio de Janeiro facility, actually *evaded* the contamination; that any moratorium on sales of the product in inventory was self-imposed and temporary; and that U.S. regulators took

no action.   *See, e.g.,* Dkt. No. 97 at 4.   Lead Plaintiffs acknowledge that the jury might be swayed by such arguments.

Assuming Lead Plaintiffs prevailed at trial – by no means a certainty – the Class would still risk an uncollectable judgment. Even prior to the SPO, the Company had a history of financial stress subsequently compounded by Sientra's self-imposed moratorium on selling products in current inventory from October 2015 until March 2016, and its inability to source new products for sale, due to the problems at the Silimed facility (including, but not limited to, the fire).

Finally, even if victory at trial and collectability were assured – which they are not – many securities cases have been lost on post-trial motions, or on appeal.   *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (jury issued verdict on liability in favor of plaintiffs, but Eleventh Circuit affirmed judgment as a matter of law against plaintiffs for lack of proof of loss causation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won $38 million jury verdict and a motion for judgment *n.o.v.* was denied, but on appeal, the judgment was reversed and the case dismissed, resulting in a total loss after ten years of litigation).

In sum, despite the perceived strength of Lead Plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation clearly support approval of the Settlement.   *See In re Syncor ERISA Litig.*, 516 F.3d at 1101; *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless settlement is clearly inadequate, approval is preferable to lengthy and expensive litigation with uncertain results."). Given the legal and practical issues Lead Plaintiffs would face, there is a substantial risk that nothing would be recovered if this case were to proceed to trial. *See, e.g.*, *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486-CW (N.D. Cal. 2007), Dkt. 1883 (jury finding in favor of defendants at trial in a securities fraud class action).   Further, as noted, there was a real risk Sientra may ultimately lack the ability to pay any potential judgment.   The ability to settle the Action now will allow Class Members to achieve approximately 20% of **maximum** potential damages,

before deduction of fees and expenses, if Lead Plaintiffs won on every single issue at trial.  This factor also weighs in favor of final approval.

### 3. The Settlement Represents a Significant Portion of Provable Damages

The Settlement represents a recovery, before fees and expenses, of 20% of the $55 million of theoretical maximum recoverable damages estimated by Lead Plaintiffs' expert, assuming full victory on all claims, and a 100% claims submission rate by all injured Class Members.  This far exceeds the approximately 4.5% median recovery for cases with investor losses in this range according to a study by National Economic Research Associates.  *See* "Recent Trends in Securities Class Action Litigation, http://www.nera.com/content/dam/nera/publications/2017/PUB_2016_Securities_Year-End_Trends_Report_0117.pdf, at 36.  Indeed, settlements valued at a much lower percentage of possible damages are routinely approved.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses).

Moreover, the estimated recovery of 20% of maximum potential damages does not take into account the various defenses put forth by Defendants.  If a jury chooses to credit Defendants' damages and loss causation experts over Lead Plaintiffs' experts, in whole or in part, with respect to whether a significant portion of either or both of the alleged share price declines were causally related to Defendants' alleged misrepresentations and omissions, damages could substantially be reduced or even eliminated.  *See, e.g.*, *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *25-26 (citing *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999)) (noting instances where a settlement was rejected by a court only to have the ultimate recovery after continued litigation be less than the proposed settlement).

Finally, when compared with the "present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing,"

the Settlement reached here is even more valuable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). Thus, where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court," the recovery of a substantial sum certain today, weighs in favor of the Settlement. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998); *see also Omnivision,* 559 F. Supp. 2d at 1042 ("[T]he Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option"). As noted above, Sientra may have no ability to pay any substantial judgment even if Lead Plaintiffs win at trial given that the Company's financial outlook remains uncertain.

### 4. The Amount of Discovery Completed and the Stage of the Proceedings Support Approval of the Settlement

In this case, Lead Plaintiffs conducted extensive ongoing private investigations concerning Sientra and Silimed and reviewed certain key Sientra internal documents produced as part of the settlement negotiation. Accordingly, Lead Plaintiffs have sufficient information to evaluate the prospects for this case on a going-forward basis and assess the adequacy of the Settlement. *See* Joint Decl. submitted herewith at ¶ 63 (enumerating Co-Lead Counsel's efforts at the time the Settlement was reached).

All of this work put Lead Plaintiffs and Co-Lead Counsel in an excellent position to evaluate both the strengths and weaknesses of the Action and the substantial risks of continued litigation. Based on their evaluation, Lead Plaintiffs, who signed the Stipulation, and Co-Lead Counsel unanimously concluded that the Settlement provides a fair, adequate, and reasonable recovery in the best interests of the Class.

### 5. Experienced Counsel Concur that the Settlement, Which Was Negotiated in Good Faith and at Arm's-Length, is Fair, Reasonable, and Adequate

---

13

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *see also Nat'l Rural*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *In re Painewebber Ltd. P'ships. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). Moreover, "a presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995); *Riker v, Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 U.S. Dist. LEXIS 120841, at *9 (D. Nev. Oct. 28, 2010) (quoting 4 A. Conte & H.B. Newberg, *Newberg on Class Actions* §11:42 (4th ed. 2002)).

This case has been litigated by experienced and well-respected counsel on both sides, all of whom specialize in securities litigation. *See, e.g.,* Exs. 2 and 3 to Joint Decl. (Co-Lead Counsel's resumes). In addition, the Settlement was achieved with the aid of a nationally-regarded mediator, Robert Meyer. The Parties engaged in negotiation during an all-day mediation on July 5, 2017 and, thereafter, for many weeks through the mediator. Joint Decl. ¶¶ 32-33. The negotiations were clearly in good faith, at arm's-length and were in no way collusive. *Id.* All Parties eventually agreed to settle the Action for $10,900,000 in cash.

The Parties then engaged in further negotiations over the details of the Stipulation and other facets of the Settlement and its documentation. *Id.* After months of further negotiations, the Parties reduced the Settlement to the specific and detailed terms reflected in the Stipulation. *Id.* That the Action was hard-fought at every stage by experienced counsel strongly militates in favor of a finding that the Settlement is fair, reasonable and adequate and should be approved.

---

14

### 6.      The Absence of a Governmental Participant

There was no governmental participant litigating on behalf of, or alongside, the Class.  Without this private, civil action there would have been no recovery for the Class.  Accordingly, this factor supports Settlement approval.

### 7.      The Reaction of the Class Members Supports Approval of the Settlement

Pursuant to the Court's January 23, 2017 Order over 10,600 notice packets were sent to potential Class Members, and summary notices were distributed over two different business wires.  Sylvester Decl., ¶¶ 12, 15.  The reaction of the Class to the Settlement was very favorable.   The deadline for Class Members to exclude themselves from the Class is April 24, 2017, and the deadline to object to the Settlement, the Plan of Allocation and the application for attorneys' fees and reimbursement of litigation expenses is May 8, 2017.  As of the filing of this Motion, there have been no objections and no exclusions from the Settlement.  *See* Sylvester Decl., ¶ 16.

"[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."  *Hanlon*, 150 F.3d at 1027; *see also Mego*, 213 F.3d at 458.  Other courts in this Circuit have held that a small number of objections raises a strong presumption that a settlement is favorable to the class.  *See In re Omnivision Technologies, Inc.,* 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008).  Here, the number of objections to date is not merely small, but zero.   Accordingly, Class Members' reaction to the Settlement also warrants approval.

### B.      Final Certification Of The Class Should Be Granted

In the Court's January 23, 2017 Order, the Court conditionally certified a class consisting of "all Persons who purchased or otherwise acquired Sientra Common Stock … pursuant or traceable to Sientra's secondary offering in September 2015, and all Persons who purchased or acquired Sientra Common Stock during the period May

15

14, 2015 through and including October 28, 2015[,]" Dkt. No. 116, ¶ 1.  As described in detail in Lead Plaintiffs' memorandum in support of preliminary approval of the settlement, certification of the Class under Rule 23 of the Federal Rules of Civil Procedure is appropriate.

### 1.    The Class Meets the Requirements of Rule 23(a)

In order for a class to be certified, it must meet the following requirements: (a) numerosity; (b) commonality; (c) typicality; and (d) adequacy of representation. *Hanlon*, 150 F.3d at 1019.  The Class here meets all the requirements of Rule 23(a).

First, the Class is sufficiently numerous as the Company had millions of shares of common stock outstanding and substantial amounts of shares sold in the SPO during the Class Period.  Indeed, over 10,600 notices were mailed to prospective Class Members.  It is thus clear that the numerosity requirement is satisfied here.

Second, all of the allegedly undisclosed facts set forth in the Complaint were common to all members of the Class. All of the Class Members purchased Sientra securities during the Class Period.  Therefore, the alleged misrepresentations and omissions by Defendants were made to the Class Members.

Third, all of the Class Members' claims are interrelated, and Lead Plaintiffs' claims are typical of those of the rest of the Class.  All Class Members suffered losses by virtue of the corrective disclosures.

Fourth, Lead Plaintiffs are adequate representatives of the Class.  Lead Plaintiffs have no conflicts with the other Class Members, and have retained counsel with vast experience in the prosecution of securities class actions.  Lead Plaintiffs have been kept apprised of the case from its inception.  Due to Lead Plaintiffs' diligence and retention of experienced counsel, their representation is adequate.

### 2.    The Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification where, in addition to the requirements of Rule 23(a), common questions of law or fact predominate over any individual question and a class action is superior to other available means of

16

adjudication.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 607 (1997).  This standard, as in most securities class actions, is easily met here.  While the §11 claims do not require a showing of scienter as do the §10(b) claims, the root of both claims and the entire class action—whether Defendants' public statements omitted and/or misrepresented material facts—is the central issue and predominates over any individual issue that may arise.  Additionally, the class action mechanism is the best method of resolving this suit.  Since the controversy for each Class Member is essentially identical, adjudicating in one suit and one forum is the most economical means of resolving this matter.  Moreover, most Class Members' damages are arguably too small to make it feasible to incur substantial litigation costs that could potentially exceed any potential recovery.

## C. The Proposed Plan of Allocation Is Fair, Reasonable And Adequate And Should Be Approved

Lead Plaintiffs also request that the Court approve the Plan of Allocation as "fair, reasonable, and adequate."  *Officers for Justice,* 688 F.2d 615 at 625 (citations omitted).  The Court has broad discretion in approving the Plan.  *Class Plaintiffs*, 955 F.2d at 1284.  A "plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Omnivision Techs.*, 559 F. Supp. 2d at 1045 (internal quotations omitted, emphasis added).  However, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *38.  In making this determination, courts have given great weight in determining the fairness, reasonableness and adequacy of a proposed plan of allocation to the opinion of class counsel.  *Id.*; *see also In re NASDAQ Market-Makers Antitrust Litig.*, 94 Civ. 3996 (RWS), 2000 U.S. Dist. LEXIS 304, at *5 (S.D.N.Y. Jan. 18, 2000) (same) (citing *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993).  Generally, "[a] plan of allocation that reimburses class members based on the extent

17

of their injuries" is "reasonable." *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *38; *see also In re Oracle Sec. Litig.*, No. C-90-0931 VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. Jun. 18, 1994). However, it is also reasonable to "allocate more of the settlement to class members with stronger claims on the merits." *Heritage*, at *38; *Oracle*, 1994 U.S. Dist. LEXIS 21593, at *3.

Here, Co-Lead Counsel believe that the preliminarily-approved Plan sets forth a fair and reasonable method to equitably distribute the Settlement Fund among Class Members. *See* Joint Decl. at ¶¶ 40-41. As reflected in the Notice, the Plan takes into account that the Section 11 claims were easier to establish and concomitantly stronger than the Section 10(b) claims by allocating more of the recovery to the Section 11 claimants, and recognizes that the Court dismissed the Section 10(b) claims for a portion of the Class Period by allocating the affected claimants a nominal amount in exchange for their releases and foregoing appeal rights as to such dismissal. The Plan and its provisions was developed in close consultation with Lead Plaintiffs' damage consultants. The Plan was described in great detail in the Notice, and to date there have been no objections to it. The Claims Administrator, Gilardi, is tasked with determining each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon his or her "Recognized Loss."

In sum, the Plan is fair, reasonable and adequate because it allocates the Settlement Fund to Class Members based on the extent of their injuries resulting from the claims alleged in this Action. *See Oracle*, 1994 U.S. Dist. LEXIS 21593, at *3 (internal citation omitted); *Torrisi*, 8 F.3d at 1375-76.

### D. The Notice Program Satisfied Due Process And Complied With Fed. R. Civ. P. 23(e)

Class Members received extensive notice of the Settlement and their right to be heard. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. Rather, to satisfy due process and comply with Fed. R. Civ. P. 23(e), notice for the approval of a class settlement by

class members must fairly apprise them of the subject matter of the suit, the proposed terms of the settlement, and the members' opportunity to be heard. *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977); *see also Torrisi*, 8 F.3d 1370. Indeed, a notice satisfies Rule 23(e) even if it contains a "very vague description" of the proposed settlement. *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980), *cert. denied*, 450 U.S. 912 (1981). Put another way, notice is "adequate if it may be understood by the average class member." *Newberg*, 11.53 at 167. Here, the Court-approved notice far exceeded those minimal standards.

### 1. The Dissemination Plan Satisfies Due Process

There is no statutory or due process requirement that all class members receive actual notice by mail or other means. Rather, "individual notices must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). "Rule 23(e) gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Products, Inc.*, No. CV F 04-5516, 2006 U.S. Dist. LEXIS 45024, at *20 (E.D. Cal. Jun. 30, 2006) (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981)). Here the notice was disseminated via individual mailing of over 10,600 printed notices, published over two national business newswires, and posted on a website indexed by major search engines. Sylvester Decl. ¶¶ 12, 14, 15. This satisfies the due process requirement. *See Rodriguez v. West Publ'g Corp.*, Case No. CV-05-3222 R(MCx), 2007 U.S. Dist. LEXIS 74849, 24-25 (C.D. Cal. Aug. 10, 2007), *aff'd in part, rev'd in part*, 563 F.3d 948 (9th Cir. 2009) (dissemination of notice via individual mailing and publication constitutes "the highest standard of notice" and satisfies the due process requirement).

### 2. The Contents of the Notice Satisfy Due Process

In this Circuit, proper notice should provide: (1) the material terms of the proposed settlement; (2) disclosure of any special benefit to the class representatives; (3) disclosure of the attorneys' fees provisions; (4) the time and place of the final

19

approval hearing and the method for objecting to the settlement; (5) an explanation regarding the procedures for allocating and distributing the settlement funds; and (6) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall*, 550 F.2d at 1178; *see also* PSLRA §78u-4(a)(7) (listing the terms of the settlement that "shall" be included in the class notice).

Here, the Court-approved notice provided all of the required information: a description of the $10.9 million cash Settlement Fund and the Plan of Allocation; Plaintiffs' Counsel's intent to apply for a fee award in an amount cumulatively not to exceed 25% of the Settlement Fund for settlement of all (Federal and State) class claims and an amount not to exceed cumulatively $105,000 for reimbursement of litigation expenses; Co-Lead Counsel's intent to apply for an award for the time and expenses incurred by each Lead Plaintiff, not to exceed $5,000 per Lead Plaintiff, and the contact information for Co-Lead Counsel and the Claims Administrator, including how to make inquiries to both. The notice also included the date, time, and place of the fairness hearing, described how to object, and informed Class Members that any objection must be sent to the Claims Administrator and Plaintiffs' Counsel no later than May 8, 2017, and any request for exclusion by April 24. Furthermore, the Court-approved notice adequately informed Class Members of the impact of the settlement, including their release of claims against Defendants for any Class Members who do not opt out.

In sum, broad dissemination of the Court-approved notice satisfied the requirements of due process, Fed. R. Civ. P. 23(e), and the PSLRA.

## V.    CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request this Court to approve the Settlement, notice program, and Plan of Allocation as fair, reasonable and adequate; permanently enjoin the assertion of any claims that arise from or relate to the subject matter of the Action; dismiss the Action with prejudice; certify the Class; and enter Final Judgment in the form attached as Exhibit A hereto.

Respectfully submitted this 24th day of April 2017.

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Lionel Z. Glancy*
Lionel Z. Glancy
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: lglancy@glancylaw.com

***Liaison Counsel for Lead Plaintiffs***

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6449
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile: (212) 661-8665
Email:  jalieberman@pomlaw.com
           ahood@pomlaw.com
           mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Leigh Handelman Smollar
Louis C. Ludwig
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
E-mail: pdahlstrom@pomlaw.com

21

lsmollar@pomlaw.com
lcludwig@pomlaw.com

**WOLF POPPER LLP**
Chet B. Waldman
Andrew E. Lencyk
Robert Plosky
Fei-Lu Qian
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: (212) 759-4600
E-mail: cwaldman@wolfpopper.com
            Alencyk@wolfpopper.com

*Lead and proposed Class Counsel*

NOTICE OF MOTION & MOTION ISO FINAL APPROVAL
No. 2:15-cv-07548-SJO-RAO

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On April 24, 2017, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 24, 2017, at Los Angeles, California.

*s/ Lionel Z. Glancy*
Lionel Z. Glancy

# Mailing Information for a Case 2:15-cv-07548-SJO-RAO John M Flynn v. Sienta, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ryan E Blair**
  rblair@cooley.com,chourani@cooley.com

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com

- **Koji F Fukumura**
  kfukumura@cooley.com,chourani@cooley.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Leigh R Handelman**
  lsmollar@pomlaw.com

- **J Alexander Hood**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com

- **Louis C Ludwig**
  lcludwig@pomlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Lesley F Portnoy**
  LPortnoy@glancylaw.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Charlene Sachi Shimada**
  charlene.shimada@morganlewis.com

- **Craig Edward TenBroeck**
  ctenbroeck@cooley.com,maraujo@cooley.com

- **Chet B Waldman**
  cwaldman@wolfpopper.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)